# Richmond

S. A. JESSUP AND W. J. SHEPHERD, ET AL. V. COMMONWEALTH
OF VIRGINIA, ETC.

November 20, 1939.

Record No. 2191.

Present, Campbell, C. J., and Holt, Hudgins, Gregory,
Browning, and Eggleston, JJ.

134

*Leon M. Bazile,* for the appellants.

*Oscar L. Shewmake, D. H. Leake* and *Lucian H. Cocke, Jr.,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

S. A. Jessup acquired two certificates of public convenience and necessity issued by the Corporation Commission. Certificate No. 313-C was issued on April 13, 1933, authorizing him to transport property by motor vehicle as a common carrier between Dillwyn and Lynchburg, over highways 15, 60, 24 and 460, with restrictions prohibiting him from accepting any freight between Appomattox and Lynchburg and intermediate points. Certificate No. 321-C was purchased by Jessup from V. A. Newton. This certificate authorized him to transport freight by motor vehicle as a common carrier between Richmond and Dillwyn over highways 6 and 15, passing through the villages and towns of Crozier, Goochland Courthouse, George's Tavern, Columbia, Dixie, Fork Union, Bremo Bluff and New Can-

ton, with restrictions that "no freight shall be taken on at Richmond for delivery in Lynchburg and no freight shall be taken on at Lynchburg for delivery in Richmond; * * * ." There were certain other restrictions in the certificate which are not pertinent to the issue presented.

Jessup, with the consent of the Commission, sold an interest in the certificates to W. J. Shepherd. Later, Jessup and Shepherd leased the right to transport freight over the highway routes named to the Rapid Transit Lines, Inc. The Rapid Transit Lines, Inc., subleased part of these rights to B. J. Knight. Under the sublease Knight was prohibited from accepting freight at any intermediate points between Richmond and Lynchburg, except between Buckingham Courthouse and Appomattox, a distance of 22 miles.

The parties stated that they were of opinion that Jessup and Shepherd, as joint owners of the two certificates, had the right to transport freight by motor vehicles over the highway routes named from Richmond to Lynchburg and from Lynchburg to Richmond. Knight, acting on this opinion, in June, 1938, launched an active campaign in the two cities soliciting through freight from Richmond to Lynchburg and from Lynchburg to Richmond. When these facts were brought to the attention of the Commission, it notified Knight that he had no authority from the Commission to transport shipments of freight originating in Richmond for Lynchburg or in Lynchburg for Richmond. Upon receipt of this notice, Knight and his lessors consulted their attorney, who immediately filed with the Commission the petition in this case alleging that "public convenience and necessity justified" the removal of the restriction prohibiting the holders of the certificate from accepting freight at Richmond for delivery in Lynchburg and freight at Lynchburg for delivery in Richmond. To this petition the Norfolk & Western Railway Co., the Chesapeake & Ohio Railway Co., the Railway Express Agency, and the Brooks Transportation Co., filed their objections. After a full hearing, the Commission denied the prayer of the peti-

tion. From the final order dismissing the case, this appeal was taken.

The only assignment of error is the refusal of the Commission to remove from certificate No. 321-C the following restriction: "No freight shall be taken on at Richmond for delivery in Lynchburg and no freight shall be taken on at Lynchburg for delivery in Richmond."

The substance of appellant's contention is that two certificates of public convenience and necessity, which were issued to establish local freight lines to serve local territories, should be enlarged to authorize the establishment of a through freight line to serve the two cities named. One of the reasons advanced in support of this contention is the fact that the highways, over which appellants are granted the right of use in their transportation business, lie in part—between Richmond and Bremo Bluff, 55 miles—on the north side of James river and that the Brooks Transportation Company, the only other common carrier of freight by motor vehicle between the two cities, is limited to the use of the highways lying wholly on the south side of James river.

It is not mandatory upon the Commission to grant a certificate of public convenience and necessity authorizing an applicant to establish a freight line by motor vehicle over all sectors of every highway, even though there may be no other carrier by motor vehicle serving that particular sector of the highway in question. Whether such a right shall be granted is addressed to the sound discretion of the Commission. The statute authorizing the Commission to issue such certificates or to enlarge any outstanding certificates is Code, sec. 4097y(6), (c), providing: "Upon the filing of an application for a certificate of public convenience and necessity, the commission shall, within a reasonable time, fix a time and place of hearing of such application. If the commission shall find the proposed operation *justified* it shall issue a certificate to the applicant, subject to such terms, limitations and restrictions as the commission may deem proper. If the commission shall find the

proposed operation *not justified,* the application shall be denied." (Italics supplied.)

The remaining part of this subsection, which is not quoted, directs the Commission to give, under certain conditions, preference to holders of existing certificates. Subsection (d) of the same section, provides: "In determining whether the certificate * * * shall be granted the commission *may among other things,* consider (1) the present transportation facilities over the proposed route of the applicant, (2) the volume of traffic over such route, (3) the financial condition of the applicant, and (4) the condition of the highway over the proposed route or routes." (Italics supplied.)

The use of the language italicized in that part of the sections quoted shows clearly that the four things enumerated were not the only things the legislature intended to be considered by the Commission in determining whether or not a certificate should be granted.

The applicant further contends that under this statute it is the duty of the Commission to consider the convenience and necessity of that part of the public within the 29-mile sector between Dillwyn and Appomattox to the exclusion of the necessity and convenience of the public over other parts of the route and at the *termini* of the freight lines. This contention is unsound. "Public convenience is always the paramount consideration." *Petersburg, Hopewell & City Point Railway Co.* v. *Commonwealth,* 152 Va. 193, 146 S. E. 292, 294, 67 A. L. R. 931. However, in arriving at this "paramount consideration," the convenience and necessity of the entire public affected by the proposed line should be considered. "For unnecessary duplication of transportation facilities, the public ultimately pays. 'Shoestring' competition, in the end, hurts everybody." *Petersburg, Hopewell & City Point Railway Co.* v. *Commonwealth, supra.*

The sole issue before the Commission was the removal of a restriction upon the joint operation of two outstanding certificates so as to permit the applicant to do a through business between Richmond and Lynchburg. The evidence

for appellants tends to show that public convenience and necessity was, in a large measure, confined to that part of the public living and doing business in the area between Dillwyn and Appomattox. A study of the evidence and the able opinion of the Commission, delivered by Judge Hooker, reveals that the Commission duly considered every phase of the evidence. Such being the case, we will adopt as our own that part of the opinion quoted below.

"The first question to be decided in this matter is whether or not there are reasonably adequate transportation facilities now being offered the public to meet the reasonable needs of the shippers and receivers of freight within the cities of Richmond and Lynchburg, Virginia, there being no contention that the intermediate territory is not now adequately served. Briefly, the facts are that the Norfolk and Western Railway Company, Chesapeake and Ohio Railway Company, Railway Express Agency, Incorporated, and Brooks Transportation Company, Incorporated, all are rendering daily service between the cities of Richmond and Lynchburg, Virginia, and the evidence of various witnesses is to the effect that there is reasonable and adequate service now being rendered shippers and receivers of freight to and from the cities of Richmond and Lynchburg by the present transportation agencies.

"The petitioners herein by lease and ownership rights hold Certificate No. 313-C, authorizing freight service between Lynchburg and Dillwyn, Virginia, which contains the restriction that: 'No service shall be rendered between Appomattox and Lynchburg, or intermediate points, and between Lynchburg and Appomattox, or intermediate points.' It is noted that under this certificate authority was granted to only serve that segment of territory along the route lying between Appomattox and Dillwyn, Virginia, a distance of approximately 29 miles, and from this territory to Lynchburg and from Lynchburg to this territory. This is all of the service Certificate No. 313-C authorizes. Certificate No. 321-C, involved in this case, carries a restriction prohibiting the transportation of any freight from the cities of Rich-

mond and Lynchburg, Virginia, when consigned to Lynchburg or Richmond, and upon the leasing of these two certificates to B. J. Knight, Sub-lessee, the transportation of freight from Richmond to Lynchburg and Lynchburg to Richmond was begun and continued until notified by the Commission that such operation was unlawful, being specifically prohibited by Certificate No. 321-C, under which operations were being conducted.

"While there is some evidence that additional motor vehicle service from and to Richmond and Lynchburg is desirable, based largely on the question of competition, however, there is substantial evidence that the service now being afforded the public by the railroads and Brooks Transportation Company, Incorporated, is efficient and abundantly adequate to meet all of the reasonable needs of the public.

"Counsel for petitioners contends that there is need for service to a small segment of territory of 29 miles lying between Appomattox and Dillwyn, Virginia, and that the revenue derived from this territory of itself is insufficient to justify continuing the operation, and for this reason petitioners should be permitted to transport freight from Richmond to Lynchburg and from Lynchburg to Richmond, a distance of 127 miles, to justify the intermediate operation serving a sparsely settled traffic territory of 29 miles, between Dillwyn and Appomattox. The record discloses that the joint petitioners control by ownership and leasehold the certificates authorizing transportation of freight between Richmond and Lynchburg, Virginia, which certificates contain certain restrictions placed therein when originally granted, and that, in addition to these restrictions, the sub-lessee, B. J. Knight, entered into the lease under date of June 21, 1938, agreeing to further restrict his operation as to local service between Buckingham and Richmond, Virginia, a distance of 83 miles, which restriction could be released by the lessor at will and which should assist in making this a profitable operation. The lease of Certificate No. 321-C, it is seen, adds no opportunity to obtain additional freight at all unless freight can be transported

from Richmond to Lynchburg and Lynchburg to Richmond, for the reason under this certificate the sub-lessee agreed to operate with closed doors from Richmond to Buckingham. This operation has added greatly to the overhead without bringing in any additional revenue to support the operation. It is quite apparent from the facts and circumstances that the motive behind this lease arrangement was to obtain a through freight service from Richmond to Lynchburg, Virginia, rather than any real desire to serve the interest of the public along the route between the cities of Richmond and Lynchburg, Virginia.

"Counsel for petitioners also contends that the Commission tacitly approved this operation from Richmond to Lynchburg because a tariff was filed showing service between these two cities. Of course, the tariff should show the terminal points of the operation of this carrier, but this fact does not authorize through transportation. It was stated that the Commission entered an order approving the filing of such tariff. This is incorrect. The Commission never enters orders approving the various tariffs filed except in formal cases. The procedure is that tariffs are filed with the Commission and if no increases are involved the tariffs are checked as soon after the filing as possible and whenever any tariff is found to be incorrect for any purpose, the Commission requires proper changes made.

"In the instant case, within a reasonable time after the filing of the tariff, it was discovered that under such tariff freight was being transported from Richmond to Lynchburg and from Lynchburg to Richmond and a corrected tariff was required to be filed. However, if the Commission had approved the tariff as filed, it is an unsound contention that it would have in the slightest manner changed the restrictions in the certificates or a single lawful right thereunder.

"The granting of certificates of public convenience and necessity or the enlargement of the authority under any outstanding certificate is premised upon the public need for the authority sought and, under the law hereinbefore

set forth, in determining whether the authority sought *shall be granted, the Commission may, among other things, consider the present transportation facilities over the proposed route of the applicant and the volume of traffic over such route.* The evidence of record in this case is most convincing that the present transportation facilities now serving the public over the route and within the defined territory as applied for by the petitioners are abundantly adequate, and meet every reasonable need of the shippers and receivers of freight within the cities of Richmond and Lynchburg, Virginia."

The Commission is vested with wide discretion in the issuance of certificates of public convenience and necessity and in the supervision of transportation by all common carriers. The judgments of the Commission are presumed to be correct. The evidence in this case is not sufficient to overcome this presumption.

*Affirmed.*