# Staunton

## ATLANTIC GREYHOUND CORPORATION v. COMMONWEALTH OF VIRGINIA AND VIRGINIA STAGE LINES, INCORPORATED.

September 8, 1954.

Record No. 4215.

Present, All the Justices.

The opinion states the case.

*Shewmake, Gary, Goddin & Blackwell* and *J. K. Thomas*, for the appellant.

*Wicker, Baker & Shuford* and *duVal Radford*, for the appellees.

HUDGINS, C.J., delivered the opinion of the court.

The Atlantic Greyhound Corporation, hereinafter referred to as Greyhound, under a certificate of public convenience and necessity, operates passenger service by motor vehicle over U. S. Route 460, including passenger service between Roanoke, Lynchburg, and intermediate points. The Virginia Stage Lines, Incorporated, hereinafter referred to as Stage Lines, under certificate of public convenience and necessity, operated intrastate passenger service by motor vehicle 9 miles out of Lynchburg over state route 297 to New London Academy. It also operated similar service for 23 miles out of Roanoke on state route 24 to its intersection with state route 122. It had no right to transport intrastate passengers over state route 122 from its intersection with state route 24 to Bedford, or from Bedford over state route 297 to New London Academy, a total distance of 23 miles. This 23 miles, as well as relative positions of U. S. route 460, over which Greyhound operates between Lynchburg and Roanoke, and the somewhat parallel line between the same points over state routes 24, 122 and 297, may be seen from the sketch filed herewith as a part of this opinion. The 23 miles in question is from the intersection of state routes 24 and 122 on route 122 10 miles to Bedford, designated A to B, and 13 miles from Bedford to New London Academy on state route 297, designated B to C.

The Stage Lines filed an application with the State Corporation Commission, hereinafter referred to as Commission, praying for a certificate of public convenience and necessity to operate intrastate passenger service by motor vehicle over the 23 miles shown on the sketch from A to B and B to C and for the right to transport passengers over this route from Roanoke to Lynchburg and return.

Greyhound intervened in the proceedings before the Commission and objected to the granting of such certificate of public convenience and necessity on the ground that it was furnishing adequate passenger service between Lynchburg and Roanoke over U. S. route 460, and averred that the public convenience and necessity did not require the competitive service proposed to be rendered by the applicant between the points named. On these issues voluminous testimony was taken and numerous exhibits were filed in support of the contentions of the parties. The Commission held that the "facts and circumstances clearly establish the need for the service proposed by the Stage Lines" and granted the certificate to the Stage Lines to operate over the routes named in the application with the following restric-

tion; namely, "no passenger shall be picked up or discharged at Bedford whose journey originates at or is destined to Roanoke or Lynchburg". From that order Greyhound appealed.

It is stated in Greyhound's brief that the following three groups of passengers are affected by the order of the Commission:

1. Passengers whose journeys begin in Lynchburg and end in Bedford or in Roanoke; passengers whose journeys begin in Roanoke and end in Bedford or in Lynchburg; and passengers whose journeys begin in Bedford and end either in Lynchburg or in Roanoke; and

2. Passengers whose journeys begin or end at any point on the route proposed to be served by Stage Lines in Bedford county, except Bedford; and

3. Passengers whose journeys begin at points west of Roanoke and end at points east of Lynchburg and *vice versa*.

Greyhound waives its objection to that group of passengers described in paragraph No. 2 whose journeys begin or end at any point on the route proposed to be served by Stage Lines in Bedford county except at Bedford, and concentrates its attack upon the finding of the Commission that public convenience and necessity require it to authorize the transportation of passengers traveling from Lynchburg to Roanoke and *vice versa*, and passengers traveling from west of Roanoke to Lynchburg and from points beyond Lynchburg via Lynchburg to Roanoke.

Prior to the filing of its application before the Commission, Stage Lines had obtained from the Interstate Commerce Commission a certificate authorizing it to transport interstate passengers over its proposed route from Roanoke to Lynchburg and beyond, and from Lynchburg to Roanoke and beyond, but, prior to the order of the Commission entered on July 23, 1953, it was not authorized to transport intrastate passengers over these same routes.

The Stage Lines has a right to transport interstate and intrastate passengers over various routes west of Roanoke into

Roanoke, and over various routes beyond Lynchburg into Lynchburg. Before the order of the Commission all intrastate passengers using the Stage Lines to Roanoke and desiring to go to Lynchburg were compelled to transfer in Roanoke from Stage Lines to Greyhound. If such passengers desired to travel on the Stage Lines to points north or south of Lynchburg, they were compelled to make a second transfer at Lynchburg from Greyhound to Stage Lines. The same was true of intrastate passengers en route to Roanoke and arriving in Lynchburg by way of Stage Lines from points beyond Lynchburg.

Additional facts found by the Commission and supported by the evidence may be summarized as follows:

1. The Stage Lines held intrastate rights between Roanoke and Moneta over state routes 24 and 122, and between Lynchburg and New London Academy over state route 297. People living in the 23 mile area along state routes 122 and 297 between the junction of state route 24 with state route 122 and over state route 297 to New London Academy, with the exception of those living in Bedford, had no public transportation to and from Roanoke, Bedford, Lynchburg, or points in Virginia beyond these cities.

2. Passengers traveling between Lynchburg and Roanoke or *vice versa* had to travel by Greyhound over U. S. route 460 regardless of whether Greyhound's schedules or terminals were as convenient as the proposed Stage Lines' schedules and terminals. Over this entire route the Stage Lines was running buses between Lynchburg and Roanoke in order to take care of interstate passengers. Local passengers might prefer to travel this route, especially in view of the fact that the terminals of the two lines in each city are several blocks apart.

3. Greyhound has no authority or rights of any kind to operate its buses over the proposed state routes 297, 122 and 24 between Lynchburg and Roanoke.

Greyhound raises some objection to the failure of the Commission to pass on the amendment to the application

filed by Stage Lines. The issues before the Commission were clearly raised by the original application and the answer of Greyhound. These issues were stated in the order of the Commission entered on February 26, 1953, when it set the case for hearing, and apparently were fully understood by both litigants. Hence, no further discussion of this assignment of error is deemed necessary.

Greyhound's major contention is that the evidence does not justify the Commission's conclusion that public convenience and necessity authorize the Stage Lines to transport passengers whose journeys begin in Lynchburg and end in Roanoke and passengers whose journeys begin in Roanoke and end in Lynchburg.

On this question of public convenience and necessity, Commissioner Hooker in his opinion states:

"The evidence is quite plain that the existing transportation facilities were not adequately meeting the needs of the public, and that the only transportation facilities that could remedy such inadequacy were the facilities of the Stage Lines. Any other decision would have been incompatible with the public interest.

"It would seem that there could be no serious question that the evidence in this case establishes that the service for which authority was granted to Stage Lines was needful, essential and conducive to the public convenience, and would be more convenient and adequate than any then available, and the granting of the certificate to operate motor vehicles as authorized by the Commission by its order of July 23, 1953, was in the best interest of the needs of the public.

"We have found as a fact that the public convenience and necessity demand the proposed service, and we construe the statute to mean that in every such case a certificate shall be granted unless the statute provides expressly or by implication that it shall not be granted."

Section 156(f) of the Virginia Constitution, among other things, provides: "(T)hat the action of the Com-

mission appealed from shall be regarded as *prima facie* just, reasonable and correct." We have held in numerous cases, among them *Jessup* v. *Commonwealth*, 174 Va. 133, 5 S. E. (2d) 482, that the "Commission is vested with wide discretion in the issuance of certificates of public convenience and necessity and supervision of transportation by all common carriers. The judgments of the Commission are presumed to be correct."

In its effort to overcome this presumption Greyhound introduced evidence tending to show that the volume of bus traffic in 1952 was only 70% of what it was in 1945, and that the cost of operation had steadily increased from 1938 through 1952; that it was furnishing a schedule of eight round trips a day between Lynchburg and Roanoke; and that, on the average, only 57% of the available space in its buses was used; that during the year from February, 1952, through January, 1953, there were 2,588 passengers who changed from Stage Lines buses to Greyhound buses, an average of seven for each day, or less than a single passenger for each of the Greyhound trips operated in either direction daily. Hence, it says that the order of the Commission granting Stage Lines the authority to transport passengers by motor vehicle between the cities is unnecessary duplication of the service that the statutes were intended to prevent.

It will be noted that the passenger bus service proposed by Stage Lines is not a duplication of such service over U. S. route 460, to which Greyhound is entitled to exclusive right to transport passengers by motor vehicle.

The statutes upon which Greyhound relies are sections 56-281 and 56-282. The former provides:

"No certificate shall be granted to an applicant proposing to operate over the route of any holder of a certificate unless and until it shall be proved to the satisfaction of the Commission that the service rendered by such certificate holder, *over such route*, is inadequate to the requirements of the public necessity and convenience; and if the Commission shall be of opinion that the service rendered by such cer-

tificate holder *over such route* is in any respect inadequate to the requirements of the public necessity and convenience, such certificate holder shall be given reasonable time and opportunity to remedy such inadequacy before any certificate shall be granted to an applicant proposing to operate *over such route*." (Italics supplied)

The latter section provides:

"In determining whether the certificate required by this chapter shall be granted, the Commission may, among other things, consider the present transportation facilities *over the proposed route* of the applicant, the volume of traffic over such route, the financial condition of the applicant, and the condition of the highway *over the proposed route* or routes." (Italics supplied)

Commissioner Hooker in dealing with this phase of Greyhound's contention well said:

"§ 56-281 and § 56-282 referred to in the brief of counsel for Greyhound are not pertinent in this case for the reason that this operation is not on route No. 460 over which Greyhound operates between Roanoke, Bedford and Lynchburg. Its certificate is limited to route No. 460. The adequacy of its service under its certificate authorizing passenger service over route No. 460 was not in dispute. The only point where there is any Stage Lines service that touches route No. 460 is within the corporate limits of the Town of Bedford, where route 122 and route 460 traverse the same streets for a very short distance. Route 24 leaves the City of Roanoke a considerable distance south of the Norfolk and Western Railway and route 460 leaves the City a substantial distance north of the Norfolk and Western Railway. These routes are probably one-half mile or more apart within the City and this distance widens between these routes to ten miles or more as shown by Exhibit No. 2, and route 297 terminates at its intersection with route 29 as it enters Lynchburg quite a distance south of where route 460 enters Lynchburg. It is plain that § 56-281 of the Virginia Code is not material in this case. § 56-282 is not

of importance because it specifically has reference to the *consideration of the present transportation facilities over the proposed route of the applicant.* This language is explicit in its meaning—it limits the Commission's consideration to *transportation facilities over the proposed route of the applicant.* There was no public transportation at all over the aforesaid routes, *except that owned and being operated by the applicant.* The volume of traffic over such route, the financial condition of the applicant and the approval of the equipment to be operated over the highway by the Department of Highways are matters of essential importance and under § 56-280 were given consideration by the Commission before it passed on the granting of this certificate.

"The Commission in its order of July 23, 1953, granting Stage Lines authority to operate over routes 24, 122 and 297, with the restriction as incorporated therein, in its opinion, protected Greyhound as far as it had the power to protect it under the law. . . .

"While it may not appear that there was as great a public need for the service between Roanoke and Lynchburg, where no transfers were involved, as for the other service, the facts and circumstances do fully justify the action of the Commission. The distance between Roanoke and Lynchburg is in excess of 50 miles. At the time this case was decided Stage Lines was operating between Roanoke and Lynchburg over more than one-half of this distance. It requested authority to connect its present operations. There was no objection to this, but Greyhound asked that if such request was granted restrictions be incorporated in such authority prohibiting the transportation of any passengers between Roanoke, Bedford and Lynchburg. The status of Stage Lines was different from that of any other applicant whose application has ever been passed on by the Commission. It is the only applicant that has owned and operated the service out of both of the terminal cities. Its service was unrestricted at both termini. The restrictions requested by Greyhound were disapproved, but transportation to and

from Bedford was restricted as described in the order of July 23, 1953. Contention of counsel for Greyhound that the service of Stage Lines is a duplication of the service being rendered by it between Roanoke and Lynchburg is not tenable. There is no duplication of service. It is admitted that the operation is over a different route. The only two places served by both carriers are the cities of Roanoke and Lynchburg. The routes do to a minor degree parallel, but the spread is so far between them that Greyhound must have considered it non-competitive since it offered no objection to the intermediate service.

"The question before the Commission was, does the public convenience and necessity require the granting of a certificate to operate motor vehicles for the transportation of passengers as authorized by the Commission in its order of July 23, 1953. The grounds upon which such certificate is granted are that the public convenience and necessity require the service sought to be rendered. The criterion is what does the public convenience and necessity require, and whether or not such public convenience and necessity is then being reasonably adequately taken care of by any existing transportation facilities. The expression 'public convenience and necessity' is one that is much elaborated on in these cases, and especially the word 'necessity' becomes the bone of contention, and it is often set forth as requiring some extraordinary demand before a necessity for it arises. In this connection Justice Holt in *The Petersburg-Hopewell and City Point Railway Company* v. *Commonwealth*, 152 Va. 203, cited with approval *In Re Walter M. Aldrick* decided by the New York Public Service Commission on October 5, 1922, and reported in P. U. R. 1923A, at page 385, where it was said:

" 'So here, the word "convenience," as connected with the word "necessity", is so connected, not as an additional requirement, but to modify and qualify what might otherwise be taken as the strict significance of the word "necessity." And to analyze and give each word a separate meaning would

be the same sort of "extraordinary departure from the usual course" spoken of by the learned Chief Justice as to result in giving a wholly meaningless prefix to "a word of rigor and strictness." In the phrase "public convenience and necessity" the word "necessity" means that which is needful, essential, requisite or conducive to "public convenience." When more convenient and adequate service is offered to the public, it would seem that necessity requires such public convenience should be served.'

"The evidence is quite plain that the existing transportation facilities were not adequately meeting the needs of the public, and that the only transportation facilities that could remedy such inadequacy were the facilities of the Stage Lines. Any other decision would have been incompatible with the public interest.

"It would seem that there could be no serious question that the evidence in this case establishes that the service for which authority was granted to Stage Lines was needful, essential, and conducive to the public convenience, and would be more convenient and adequate than any then available, and the granting of the certificate to operate motor vehicles as authorized by the Commission by its order of July 23, 1953, was in the best interest of the needs of the public. . . .

"When the statute was first enacted, it contained the following provisions in favor of the public (Acts of 1932, page 703):

" 'Sixth. Nothing in this act shall be so construed as to prevent the commission from granting a certificate where it appears that the public convenience or necessity demands the proposed service.'

"That blanket provision for the protection of the public was eliminated in 1936 and the language on which Greyhound relies was added to the law; but we consider that the interests of the public are still the paramount consideration except to the extent that the statute confers paramount rights on an existing certificate holder.

"§ 56-281 confers such rights on an existing certificate holder only over its existing *route.* . . ."

In 1950 the General Assembly amended code section 56-273, paragraph (o), to give a more restricted definition of "route" than had been given formerly by this Court. This amendment provides:

"When used in connection with, or with respect to, a certificate of public convenience and necessity the word 'route' means the road or highway, or segment thereof, operated over by the holder of a certificate of public convenience and necessity or proposed to be operated over by an applicant therefor, whether such road or highway is designated by one or more highway numbers."

The Commission construed this amendment in its opinion as follows:

"Thus it appears that in 1950 the General Assembly gave particular consideration to the question of the scope of the protection of existing certificate holders, and decided that the rights of the holder should be paramount over the *highway* served by him. We are not at liberty to extend that protection to the surrounding territory or to parallel highways. . . ."

"One who claims a franchise or privilege in derogation of the common rights of the public must prove his title thereto by a grant clearly and definitely expressed, and cannot enlarge it by equivocal or doubtful provisions or probable inferences." 23 Am. Jur. 726, Franchises § 16.

We find no error in the decision of the Commission and affirm its order.

*Affirmed.*