19689. TAMIAMI TRAIL TOURS, INC. *v.*
GEORGIA PUBLIC SERVICE COMMISSION *et al.*
19690. THE GREYHOUND CORPORATION *v.*
McWHORTER, *et al.,* Comrs., *et al.*

ARGUED MAY 15, 1957—DECIDED JUNE 12, 1957—REHEARING
DENIED JULY 5, 1957.

*Wilson, Branch & Barwick, John E. Branch, John W. Wilcox, Jr.*, for plaintiff in error in case No. 19689.

*Gambrell, Harlan, Russell, Moye & Richardson, Theodore M. Forbes, Jr., Robert R. Richardson*, for plaintiff in error in case No. 19690.

*Eugene Cook, Attorney-General, Robert H. Hall, E. Freeman Leverett, Assistant Attorneys-General, T. Baldwin Martin, Special Deputy Assistant Attorney-General, Martin, Snow & Grant, Reuben G. Crimm, Guy Postell*, contra.

MOBLEY, Justice. ■ The plaintiffs in error contend that the Commission was without authority to transfer the certificate of Southeastern Motor Lines, authorizing it to operate between Macon and Barnesville, to Atlantic Stages. In 1950, Southeastern leased its rights under the certificate to Miller Bus Line. Miller's rights to operate under the certificate were suspended by the Commission in 1952. In January, 1956, Miller having voluntarily relinquished any rights he may have had to the certificate, the Commission reinstated and reissued the certificate

to Southeastern. The Commission is authorized, for reasonable cause and after notice and opportunity to be heard, to suspend, revoke, alter or amend a certificate when, in its opinion, the holder thereof is not furnishing adequate service. Code § 68-607. By reason of this authority and for failure to comply with the regulations of the Commission, Miller's right to operate was suspended. The Commission had authority to revoke the certificate, but it did not do so. We are of the opinion that so long as the certificate remained unrevoked, the Commission could authorize its transfer. The question of public convenience and necessity having been determined by the Commission at the time the certificate was issued, the Commission would not be required on an application for transfer to consider that question again before granting a transfer of the certificate.

■ Code (Ann. Supp.) § 68-609 provides that "No certificate or authority shall be granted to an applicant proposing to operate over the route of any holder of a certificate or authority when the public convenience and necessity with respect to such route is being adequately served by such certificate or authority holder; and no certificate or authority shall be granted to an applicant proposing to operate over the route of any holder of a certificate or authority unless and until it shall be proved to the satisfaction of the Commission that the service rendered by such certificate or authority holder, over the said route, is inadequate to the public needs; and if the Commission shall be of opinion that the service rendered by such certificate or authority holder over the said route is in any respect inadequate to the public needs, such certificate or authority holder shall be given reasonable time and opportunity to remedy such inadequacy before any certificate or authority shall be granted to an applicant proposing to operate over such route." The plaintiffs in error contend that they were not given the opportunity to remedy any existing inadequacy in service in this case as is required by this Code section, and in answer thereto Atlantic says that its proposed route is not over the route of either of them.

Greyhound's certificate authorizes it to operate from Macon to Atlanta over U. S. Highway 41, running through Forsyth, Barnesville, Griffin and Jonesboro. Atlantic's application is for

a certificate from Macon to Atlanta over several State highways and one rural road, none of which traverses U. S. 41 except to intersect it in Barnesville and Griffin. Tamiami operates between Griffin and Atlanta over U. S. 41, and between Fayetteville and Atlanta over Georgia Highway 54. All agree that the three applications of Atlantic cover entirely different roads and highways than those of Greyhound and Tamiami. The question is, what is the meaning of the word "route" as used in the statute? Does it mean "highway", "road", "course of way to be travelled", or does it mean direction of travel or territory? This question has not previously been answered by this court.

The quoted section of our Code above is an adoption of a Virginia statute. The Supreme Court of Appeals of Virginia, in Virginia Stage Lines, Inc. v. Commonwealth, 186 Va. 1066, 1076 (45 S. E. 2d 318), in construing the meaning of the word "route" as used in its statute, said: "In Webster's New International Dictionary, 2d Ed., Unabridged, 'route' is defined as: 'the course or way which is or is to be travelled or pursued; a course; road; path; march.' 'Territory' is defined as: 'a large estate or tract of land; a region, a district.' A 'route' is a direction of travel from one place to another. It may be over one or more named or numbered highways or paths. A 'highway' is a road for travel, and may be a portion of one or more different routes. When numbered or named as a highway running from one point to another, it becomes a route. . . Carriers are not certified to operate in a certain 'territory,' but over a designated 'route.' The 'route', that is, the road to be travelled, serves the 'region', 'district', or 'territory', adjacent to it. The words 'territory' and 'route' are not synonymous in general meaning."

Since that decision, the Virginia statute has been amended to provide that the word "route", when used in connection with a question of necessity and convenience, means the highway or road, or segment thereof, operated over by the holder of a certificate. See Atlantic Greyhound Corp. v. Commonwealth, 196 Va. 183 (83 S. E. 2d 379). This amendment merely wrote into the statute what the court had held. At the time of the adoption of this portion of the Code section by the Georgia legislature in 1950, the Virginia statute as originally enacted was in effect,

and the Supreme Court of Appeals of Virginia had interpreted it. We would therefore conclude that the Georgia legislature in passing this act intended for the word "route" to mean what the Virginia court had held it to mean. "When a statute has been adopted from another State, the judicial construction already placed thereon by the highest court of the jurisdiction from which it is taken accompanies it, and is treated as incorporated therein." *Seaboard Air-Line Ry. Co. v. Fountain*, 173 *Ga.* 593 (2a) (160 S. E. 789). Other courts have adopted the same construction. In State *v.* Queen City Coach Co., 233 N. C. 119 (63 S. E. 2d 113), in construing a statute with language identical with ours, it was held: "Service of the same communities between the same points but over different routes does not constitute service of a route already served, within the meaning of the act" and "There is nothing in the statute to prohibit the service of the same points by different carriers over separate routes when it is found by the Commission that such duplicate service is in the public interest." See also State *v.* Ray, 236 N. C. 692 (73 S. E. 2d 870); Shelton *v.* Anacortes-Mount Vernon Stage Co., 23 Wash. 2d 840 (162 Pac. 2d 450); Union Transfer & Storage Co. *v.* Huber & Huber, 265 Ky. 736 (97 S. W. 2d 609). In Consolidated Freightways, Inc. *v.* United States, 136 Fed. 2d 921, it was held: "The words 'route' and 'routes' are manifestly used [in the Interstate Commerce Act] to signify the highways where the motor vehicles operate and not the areas between terminal points."

We are of the opinion that the word "route", as used in our statute, means the particular highway or road, or series of highways or roads, over which a carrier is authorized by the Commission to operate its vehicles between terminal points. Since the proposed route was not the same as that used by Greyhound, that company was not entitled to notice and opportunity to remedy inadequate service as required by the Code section.

It appears from the record that Continental Crescent Lines has a certificate to operate bus service over a portion of the same route proposed by Atlantic, i.e., between Griffin, Fayetteville and Atlanta, and makes one round-trip run each week over the route. Tamiami contends in this court that, because Continental Cres-

cent was not afforded the notice and opportunity provided by Code (Ann. Supp.) § 68-609, the Commission was without authority to issue the new certificates to Atlantic. There was undisputed evidence before the Commission that Continental Crescent had notice of the hearings but did not appear and that said company had no objections to the granting of the applications to Atlantic. Tamiami Trail Tours does not contend that *it* was entitled to the benefit afforded by the Code section, and it is not in a position to assert as its own the rights of one not a party to the case and in no way related to Tamiami.

The plaintiffs in error contend that there is no evidence in the record to support the finding of the Commission that Atlantic has proved public convenience and necessity as to its application for a certificate to operate between Barnesville and Griffin and its other application to operate between Griffin and Atlanta. No common carrier shall operate without first obtaining from the Commission, after hearing, a certificate of public convenience and necessity, "pursuant to findings to the effect that the public interest requires such operation." Code § 68-604. In determining whether the public interest requires the service and whether the certificate shall be granted, the Commission is directed by statute to consider the five subjects set out in Code (Ann. Supp.) § 68-609. While these provisions are only directory or advisory, and it is not mandatory that each be proved before the Commission is authorized to grant a certificate (*Petroleum Carrier Corp.* v. *Davis*, 210 *Ga.* 568, 570, 81 S. E. 2d 805), we recognize that this is a pronouncement by the General Assembly of principles of law generally accepted as elements of proof of public convenience and necessity.

This court will not substitute its own discretion or judgment for that of the Public Service Commission, nor will it interfere with a valid order of the Commission unless it be clearly shown that the order is unreasonable, arbitrary or capricious. *Atlanta Motor Lines* v. *Georgia Public Service Commission*, 211 *Ga.* 698 (1) (88 S. E. 2d 387). If there is any evidence to support the action of the Commission in granting the certificates in this case, we would not be authorized to interfere therewith.

Many witnesses testified that the people living on Atlantic's

route between Macon and Savannah, because of the inconvenience of transferring from Atlantic's busses to Greyhound's busses in Macon, which companies operate out of different stations, were not now using the available bus service of Atlantic between Macon and Savannah, but would use such service if Atlantic operated through to Atlanta. There was evidence that a number of bus passengers between Macon and Savannah were transferring in Macon for service to Atlanta and points in between. There was evidence that Warner Robins, a town of 20,000 inhabitants located 17 miles south of Macon, is serviced by Southern Transit on an hourly schedule between Macon and Warner Robins and into the Southern Stages station; that it is difficult and inconvenient for those going to and from Warner Robins to Atlanta to transfer from the Trailways Station to Greyhound; that they need the through service to and from Atlanta which Atlantic Stages proposes to furnish, and that they need bus express service to and from Atlanta, which they do not now have. There was also evidence from people living on the proposed route from Barnesville to Griffin that they were without bus service, that they desired service, and that they would use it if it were available. There was testimony from people between Griffin and Atlanta via Fayetteville and from others that the service, particularly between Griffin and Fayetteville, which was only one round trip per week by Continental, was inadequate, that to go south out of Fayetteville they had to go to Jonesboro or Atlanta, and that additional service was needed and, if provided, would be used.

However, there is no evidence in this record that supports the order of the Commission authorizing additional service at Barnesville and Griffin, the two points where the proposed route crosses the existing routes on which certificates are held by the plaintiffs in error and by the Central of Georgia Railway Company, which furnishes passenger service with its streamlined train, the "Nancy Hanks". The evidence is undisputed that the service at both Griffin and Barnesville north to Atlanta and south to Macon is not only adequate to meet the needs of the public but is more than adequate. Only recently the Commission permitted Greyhound to discontinue two of its daily schedules

between Griffin and Barnesville because of lack of business. The undisputed evidence shows that Greyhound is running between Griffin and Barnesville and between Griffin and Atlanta with a large number of empty seats daily. The evidence further shows that Tamiami, which serves the Griffin to Atlanta route, is presently operating at a deficit over said route. The evidence was of one accord that bus transportation had declined substantially recently and was still declining. And, while under Code § 68-605 the Commission is authorized to issue a certificate as "prayed for or issue it for the partial exercise of the privilege sought; and may attach to the exercise of the rights granted by such certificate such terms and conditions as in its judgment the public interest may require," the new certificates authorize Atlantic to provide not only service over a new route but also to provide additional service at Griffin and Barnesville, which the evidence shows the public interest does not require. In view of the total lack of evidence to support the granting of the certificates including service at Griffin and Barnesville, the Commission erred in granting the applications for new service.

■ Code § 68-523 provides as follows: "The Commission is hereby authorized to adopt, after reasonable notice and hearing thereon, such rules and orders as it may deem necessary in the enforcement of the provisions of this Chapter. Such rules and orders so approved by the Commission shall have the same dignity and standing as if such rules and orders were specifically provided in this Chapter." Code § 93-501 provides in part that "The Public Service Commission shall prescribe the rules of procedure and for taking of evidence in all matters that may come before it. In the investigation, preparation and hearing of cases, the Commission shall not be bound by the strict technical rules of pleading and evidence, but it may exercise such discretion as will facilitate its efforts to ascertain the facts bearing upon the right and justice of the matters before it." Rule 91 of the Commission provides in part as follows: "Upon the hearing of all cases that may come before the Commission the respective parties may present their testimony, either written or oral, or by affidavits. All affidavits intended to be offered by either party shall be served upon the opposite party, his counsel or agent hav-

ing control of the case, at least three days, and all counter affidavits at least twelve hours before the date set for their hearing." At the hearings, Atlantic Stages introduced some 300 affidavits signed by people living near or on its present route and the new route which were to the effect that the proposed service was desirable, needed and would be beneficial to the affiants and their area. These affidavits were objected to on the ground that their introduction deprived the plaintiffs in error of a fair trial in that they were deprived of the right of cross-examination.

It is an established rule of evidence in this State that, in a judicial trial in a court of law, where evidence is finally adjudicated and final judgments are rendered, ex parte affidavits are inadmissible, and their admission in such a case over proper objection constitutes reversible error. *Camp* v. *Camp,* 213 *Ga.* 65 (97 S. E. 2d 125). The Public Service Commission is an administrative body, created by the General Assembly and invested by that body with certain powers and duties in the regulation of motor common carriers. It does not possess legislative powers, but performs quasi-legislative functions by virtue of the express powers conferred upon it by the General Assembly. *Zuber* v. *Southern Ry. Co.,* 9 *Ga. App.* 539 (71 S. E. 937) ; *Southern Ry. Co.* v. *Melton,* 133 *Ga.* 277 (65 S. E. 665). The question in this case is whether, under the authority conferred upon the Commission under the Code sections, supra, the Commission may lawfully adopt a rule permitting the introduction in· evidence before it of ex parte affidavits.

Under the statute, the Commission is not bound by the strict technical rules of pleading and evidence. It has been recognized by this court and by the courts of other jurisdictions that an administrative body such as the Public Service Commission may, in matters which come before it for determination, perform quasi-judicial functions as well as quasi-legislative functions. The distinction between the two types of functions has been deemed of importance because where a proceeding is judicial or quasi-judicial in nature, the parties whose rights are adjudicated are entitled to the protection afforded by judicial forms of procedure. *South View Cemetery Assn.* v. *Hailey,* 199 *Ga.* 478, 481

(34 S. E. 2d 863). In *Southeastern Greyhound Lines* v. *Georgia Public Service Commission,* 181 *Ga.* 75 (181 S. E. 834, 102 A. L. R. 517), the question of the distinction between the two functions was discussed at length, and it was held that "The grant of the certificate [of public convenience and necessity] was the exercise of administrative or legislative power, and the revocation of the certificate was the exercise of a power of the same character." The only question involved in that case was a revocation of a certificate and it was not necessary to decide whether the *grant* of a certificate was quasi-legislative or quasi-judicial. Therefore, that decision would not be authority for the question now before us. However, the reasoning employed in that case is equally applicable, and even more so, as respects the granting of a certificate, where none has been issued before and no rights as respects the authority to use such a certificate have ever been conferred. Counsel for the plaintiffs in error rely strongly on the fact that the statute provides for a hearing on an application as being indicative that the Commission is acting judicially. But the mere fact that a hearing is afforded is not determinative. It is the nature of the act to be performed by the body before which it is conducted that is determinative. *Mutual Light & Water Co.* v. *City of Brunswick,* 158 *Ga.* 677, 681 (124 S. E. 178). In the hearing on an application for a certificate, the Commission merely conducts an investigation of fact, authorized by statute, in the determination of which the primary concern is the public interest and welfare. Whether or not it grants an application for a certificate is purely a matter of discretion and not one of absolute right. *Daniels* v. *Commissioners of Pilotage,* 147 *Ga.* 295 (93 S. E. 887).

The Commission is authorized by statute to adopt rules of evidence and procedure in carrying out its duties in the administration of Chapter 68 of the Code, and is not bound by strict rules of evidence in conducting its hearings. Code § 68-523. Similar statutes of other jurisdictions with respect to administrative agencies have been considered by the courts, and it has been generally held that the strict rules of evidence applicable in jury-trial cases are not applicable before quasi-legislative agencies. Long Beach Gas Co. *v.* Maltbie, 36 N. Y. S. 2d 194

(264 App. Div. 496) ; Western Ry. of Ala. *v.* Montgomery County, 228 Ala. 426 (153 So. 622) ; In re New England Power Corp., 103 Vt. 453 (156 Atl. 390) ; Solar Elec. Co. *v.* Penn. Pub. Utilities Comm., 137 Pa. Super. 325 (9 Atl. 2d 447). In Consolidated Edison Co. *v.* National Labor Relations Board, 305 U. S. 197, 229 (59 Sup. Ct. 206, 83 L. ed. 126), it is said: "The obvious purpose of this and similar provisions is to free administrative boards from the compulsion of technical rules so that the mere admission of matter which would be deemed incompetent in judicial proceedings would not invalidate the administrative order. . . But this assurance of a desirable flexibility in administrative procedure does not go so far as to justify orders without a basis in evidence having rational probative force. Mere uncorroborated hearsay or rumor does not constitute substantial evidence." The introduction of the affidavits before the Commission in the instant case was not error.

■ Plaintiffs in error excepted to the admission in evidence of certain financial statements of Atlantic Stages based upon estimated future earnings and to the admission of a financial statement of F. L. Wilkinson, who is principal stockholder of Southern Stages, which owns the stock of Atlantic. As pointed out in division 4 above, the Commission is authorized to exercise such discretion in the admission of evidence before it as will facilitate its efforts to ascertain the facts bearing on the matter under investigation. The Commission did not abuse its discretion in permitting these statements in evidence, and their admission was not error.

■ The exception to the introduction into evidence in the superior court of the verified answer of the defendants is without merit. "The petition and the answer, both being verified, served the office of both pleadings and evidence on the application for injunction." *Saint Amand* v. *Lehman,* 120 *Ga.* 253 (4) (47 S. E. 949) ; *Roberts* v. *Roberts,* 180 *Ga.* 671 (3) (180 S. E. 491) ; *Moss* v. *Moss,* 196 *Ga.* 340, 346 (26 S. E. 2d 628) ; *Kniepkamp* v. *Richards,* 192 *Ga.* 509 (7) (16 S. E. 2d 24).

■ Tamiami objected at the interlocutory hearing to the introduction in evidence of the testimony adduced before the Commission on March 27 relative to Atlantic's application be-

tween Barnesville and Griffin, the objection being that Tamiami was not present at said hearing and that said testimony was not admitted by the Commission in the hearings of June 7, 19 and 20. The record shows that Modern Coach Corp., Tamiami's predecessor, had notice of the hearing of March 27 but failed to appear. Greyhound appeared at the hearing in opposition to the application. A copy of the March 27 testimony was served on Tamiami prior to the later hearings; and the record shows that such testimony was admitted in evidence at the hearing on June 7 over objection of counsel for Tamiami. Tamiami's objections are without merit.

*Judgments affirmed in part and reversed in part. All the Justices concur, except Duckworth, C. J., and Head, J., who dissent in part. Hawkins, J., concurs specially.*

HEAD, Justice, dissenting. The transportation as a common carrier of persons and property for hire by motor vehicle on the public highways of this State is a business vitally affecting the rights, interest, and welfare of every citizen, and the public policy of this State requires strict regulation of this business, which regulation has been entrusted to the Georgia Public Service Commission by the Constitution and laws of this State.

The Motor Common Carriers Act of 1931 appears as Chapter 68-6 of the Code of 1933. Section 68-604 provides: "No motor common carrier shall, except as hereinafter provided, operate without first obtaining from the Commission, *after hearing* under the provisions of this Chapter, a certificate of public convenience and necessity, pursuant to findings to the effect that the public interest requires such operation." (Italics supplied.) Section 68-607 provides that, "The Commission may, at any time after notice and opportunity *to be heard* and for reasonable cause, suspend, revoke, alter, or amend any certificate. . ." (Italics supplied.) Section 68-608 provides that a certificate may be transferred or hypothecated upon application to and approval by the Commission.

In the present case it appears that in 1950 Southeastern Motor Lines, Inc., transferred its right under a certificate of convenience and necessity to operate as a motor common carrier to the Miller Bus Line; that Miller's right to operate under the certificate was

suspended by the Commission in 1952; that in January, 1956, Miller having relinquished his rights, the Commission reinstated and reissued the certificate to Southeastern Motor Lines, Inc.; and that, thereafter, Southeastern transferred its certificate of convenience and necessity to Atlantic Stages, Inc., and this transfer was approved by the Georgia Public Service Commission *without a hearing.*

The majority opinion states that the Commission had authority to revoke the certificate in so far as Miller's right to operate was concerned, but that they only suspended the certificate, and that the question of public convenience and necessity having been determined at the time the certificate was issued, the Commission was not required to consider again this question before granting the transfer from Southeastern Motor Lines, Inc., to Atlantic Stages, Inc. This ruling is a flat contradiction of the statute. The requirements of § 68-604, that no motor common carrier shall operate without obtaining from the Commission, *after hearing,* a certificate of public convenience and necessity, is not limited by its terms to the original grant of such a certificate, but applies alike in each and all instances, whether the certificate, having been suspended, is to be reinstated, or being effective, is to be transferred. The transfer of a certificate six years subsequently to the original grant does not relate to the conditions that existed at the time the certificate was issued. There is simply no basis in law or in fact to sustain a conclusion that the requirements of § 68-609 having once been complied with, can be ignored and disregarded six years later, or for all time to come. The transfer of the certificate from Southeastern to Atlantic without a hearing by the Commission is, in my opinion, a definite violation of the law, and void.

Any technical or finespun definition of the word "route" which fails to take into consideration the focal points involved, is wholly devoid of any practical application of the term. It is from the towns and cities that the bulk of the business of a motor common carrier originates, and where, as in this case, it is shown that a motor carrier of persons is operating at a loss, the Commission can not justify, under § 68-609, the grant of another certificate of convenience and necessity, simply because different roads may be traveled in serving the same cities and towns.

Where existing transportation service is reduced with the consent and approval of the Commission, there can be no basis for granting an additional certificate of convenience and necessity as related to the territory involved. The majority opinion is therefore correct in so far as it holds that the Commission was without authority to grant a certificate of convenience and necessity for additional service as related to the cities of Barnesville and Griffin.

"The object of all legal investigation is the discovery of truth. The rules of evidence are framed with a view to this prominent end, seeking always for pure sources and the highest evidence." Code § 38-101. Code § 93-505 provides that the Public Service Commission shall have power to issue subpoenas for the attendance of witnesses, with power to compel their attendance, "and said court shall have power to punish for contempt as in other cases of refusal to obey the process and order of such court." Code § 93-506 authorizes the Commission to compel the giving of testimony. Numerous sections of the Code provide for a hearing by the Commission (see §§ 68-504, 68-507, 68-607, 68-611, 68-618, 68-621), and there is simply no basis for any contention that a hearing by the Commission is not a "legal investigation," the object of which is the discovery of the truth. The object of the discovery of truth in such legal investigations by the Commission is not restricted, modified, or repealed, by Code § 93-501, which states in part that, "the Commission shall not be bound by the strict technical rules of pleading and evidence, but it may exercise such discretion as will facilitate its efforts to ascertain the facts bearing upon the right and justice of the matters before it." Since "facts" are "truth," and truth must include the facts, no authority has been granted to the Commission to depart from the object of all legal investigation, the discovery of truth.

It is, or should be, known that where a party, or his counsel representing him, prepares an affidavit in the interest of the party, that only such matters as the party or his counsel deems of value to his cause will be included therein. Such an affidavit may be true in so far as the matters stated therein are concerned, and at the same time constitute worse than a half-truth or a misrepresentation, because of the matters omitted therefrom,

which would be adverse to the party offering it and directly beneficial to the opposite party. The introduction of affidavits defeats the right of cross-examination, which frequently leads to the discovery of the whole truth, and affidavits are not admissible where a substantial right in a legal investigation is to be finally determined, until reversed or set aside. There can be no question but that the granting, or refusal to grant, a certificate of convenience and necessity under the Motor Common Carriers Act involves a substantial right. Any judicial fiction as to the nature and character of the duties performed by the Public Service Commission can not destroy the fact that in the conduct of hearings the Commission is conducting a legal investigation, where substantial rights are involved, and the general rules of evidence applicable to legal investigations in this State should apply thereto. *Faircloth* v. *Taylor*, 147 *Ga.* 787 (95 S. E. 689); *Camp* v. *Camp*, 213 *Ga.* 65 (97 S. E. 2d 125).

It appears that the affidavits introduced by the applicant, Atlantic Stages, Inc., were considered by the Commission, and therefore its decision was based in part upon illegal and incompetent evidence, and the grant of a certificate to the applicant in this case should be declared void and of no effect.

For the reasons stated, I dissent from the rulings in divisions 1, 2, and 4 of the majority opinion. I am authorized to say that Mr. Chief Justice Duckworth concurs in this dissent.

HAWKINS, Justice, concurring specially. I concur in the judgment, but dissent from the ruling made in Division 1 of the majority opinion for the reasons pointed out in the dissenting opinion of Justice Head.