27235.   ATLANTA GAS LIGHT COMPANY v. GEORGIA PUBLIC SERVICE COMMISSION et al.

ARGUED JUNE 13, 1972—DECIDED OCTOBER 5, 1972—
REHEARING DENIED NOVEMBER 9, 1972.

*Hansell, Post, Brandon & Dorsey, Albert G. Norman, Jr., Carroll L. Wagner, Jr.,* for appellant.
*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr.,*

*Executive Assistant Attorney General, Robert J. Castellani, John W. Hinchey, Assistant Attorneys General, Troutman, Sanders, Lockerman & Ashmore, Allen E. Lockerman, Tench C. Coxe, James E. Joiner, Warren O. Wheeler,* for appellees.

MOBLEY, Chief Justice. This appeal is from a judgment of the Superior Court of Fulton County denying injunctive relief against the Georgia Power Company, and the Georgia Public Service Commission and the members thereof, in an action brought by the Atlanta Gas Light Company seeking to invalidate an order of the Commission establishing service charges for Georgia Power in connection with the extension of Underground Residential Distribution (URD) service to its customers.

The appellant, Atlanta Gas, asserts that the issues made in the appeal are as follows: "(1) Whether the URD plan ordered by the Commission violates the constitutional and statutory provisions of Georgia relating to restraints of trade and monopolies. (2) Whether such plan violates the provisions of Georgia law prohibiting undue discrimination in utility practices. (3) Whether such plan violates the provisions of Georgia law prohibiting rebates and bonuses by utilities. (4) Whether such plan, and the order of the Commission authorizing the same, is supported by the evidence."

The primary impetus for URD has come from the Veterans Administration and Federal Housing Administration, which require new residential subdivisions to have underground electric facilities to qualify for loan guaranties. In initial experimental studies made by Georgia Power it was determined that the cost of underground facilities was approximately twice that of overhead facilities. Georgia Power in November, 1967, made application to the Commission for an order establishing a service charge for the installation of URD, in order to recover the increased cost of this special service, submitting a plan based in part on an investment-income ratio, that is, a plan whereby Georgia Power makes an investment to serve a particular customer on a scale

relative to the anticipated revenue from that customer, with the customer paying the amount above this investment. In the plan submitted the ratio proposed for dwellings that were not electrically heated was 1.5, and for dwellings that were electrically heated, 1.7.

Atlanta Gas, and others, intervened, protesting the plan submitted by Georgia Power. The Commission rejected this plan, but ordered an investment-income ratio method of calculating the service charge, providing that the ratio of 1.6 be used for all customers, whether or not using electricity for all utility purposes. This order provided that for URD Georgia Power shall obtain a payment per dwelling in the amount by which the cost of providing underground service exceeds the greater of 1.6 times the estimated annual revenue therefrom or the average overhead distribution cost per lot of $245. For multi-unit dwellings, 75% of the annual revenue is used in the formula, with $106 as the average overhead cost per unit.

After protests by the interested parties, amendments were made to the order of the Commission. The order as finally amended, entered after numerous hearings, retained the investment-income ratio method of calculating the service charge, and it is this feature of the order which is challenged by Atlanta Gas. The Commission retained jurisdiction of the URD plan and ordered Georgia Power to file quarterly and annual reports pertaining to URD developments.

Atlanta Gas filed its complaint in Fulton Superior Court in January, 1969. The court decided the case without the intervention of a jury, on the pleadings, the record before the Commission, stipulated facts, and affidavits. The court found that the evidence supported the order of the Commission, and that the order is not unreasonable, arbitrary, or capricious.

Atlanta Gas contends that the order of the Commission offends the Georgia Constitution, Art. IV, Sec. IV, Par. I (*Code Ann.* § 2-2701), which provides: "All contracts and agreements which may have the effect, or be intended to have

the effect, to defeat or lessen competition, or to encourage monopoly, shall be illegal and void. The General Assembly of this State shall have no power to authorize any such contract or agreement." It also contends that the order is illegal under *Code Ann.* § 20-504, which provides that a contract in general restraint of trade is unenforceable.

The complaint of Atlanta Gas originally charged that the order offended the Federal anti-trust statutes, but this contention has been abandoned since a co-intervenor, Gas Light Company of Columbus, made this contention in the Federal Courts, and received an adverse ruling on it. The United States Court of Appeals, Fifth Circuit, held that the Federal anti-trust laws do not apply to a regulatory judgment by the Georgia Public Service Commission, entered after notice and adversary proceedings. Gas Light Co. of Columbus v. Ga. Power Co., 440 F2d 1135.

Atlanta Gas asserts that the service charge set by the Commission creates a monopoly, or is in illegal restraint of trade, in the following way: The service charge must be paid at the time of the installation of the underground wiring, which results in the developer of a subdivision having to make this payment, rather than the ultimate user of the electricity. Since the service charge ordered by the Commission uses anticipated gross revenue as a factor in the investment of Georgia Power, which determines the contribution that the consumer must make, the total electric users, from whom greater revenues are anticipated, will pay a smaller service charge than nontotal electric users. The developers of the subdivisions in order to avoid the larger payments of service charges will be "unwilling salesmen for electric energy," and as a matter of economic necessity to the developers, total electric houses will be built in the URD subdivisions. Where URD facilities are required, Georgia Power will have an advantage which will eliminate competing suppliers of energy.

The facts of the present case are completely dissimilar to those in *Gas Light Co. of Columbus v. Ga. Power Co.*, 225 Ga. 851 (171 SE2d 615), where this court held invalid a

restrictive covenant in a deed by Georgia Power Company, conveying surplus property, which deed required that any building located on the land must utilize electric energy supplied by Georgia Power Company for all lighting, heating, air-conditioning, and other named purposes. This court's ruling was based on the holding that public policy prohibits a public utility from enforcing any contract or agreement repugnant to its public duty to serve all persons similarly situated impartially, uniformly, and without discrimination.

The present case does not involve an order attempting to prevent Atlanta Gas from serving any customers in the subdivisions where underground electrical wiring is installed. Atlanta Gas concedes that the impetus for underground wiring has come from Federal agencies, and recognizes the right of Georgia Power to supply such underground wiring and the necessity for a separate rule by the Commission to apply to such installation because of its additional cost.

It is asserted by Atlanta Gas that at the time Georgia Power requested an adjustment in the service charge Georgia Power suggested several plans which might be used: (1) Requiring customers desiring URD to make a cash payment equivalent to the actual difference in cost between underground and overhead wiring. (2) Requiring payment of the average difference in cost between underground and overhead facilities. (3) Establishing a separate rate for URD service. (4) Adding an underground surcharge to existing rates. (5) Basing the payment on front footage measurement of the lot to be served by URD.

The Commission stated in its order that these plans had been given careful study; that after experience with the investment-income ratio principle over many years, it had decided to use this method for URD. The record shows that the investment-income ratio principle is used by Georgia Power as to its overhead wiring installation, and by Atlanta Gas as to its investment in gas pipelines.

There was evidence that the cost of overhead wiring has

increased, and the cost of underground wiring has decreased. Georgia Power introduced evidence that in certain specified URD extensions no contributions were required from the consumers, although major gas appliances were installed. The Commission has retained jurisdiction of the URD service charges, and has required periodic reports from Georgia Power, which will allow the Commission to make necessary adjustments in the formula as economic conditions change.

The order of the Commission provides a flexible method of recovering the installation cost of URD, in line with the fluctuation in costs of overhead and underground installation, and the rate for electric service. The other methods suggested do not take into account these changing factors, and are not as fair to the consumer.

Georgia Power has the competitive advantage in any area that it can supply all utility needs with electrical energy, while Atlanta Gas can serve only the major needs of heating and air-conditioning. Atlanta Gas has the same right to compete in the areas where underground electrical wiring is installed as in other areas, by promoting its products as being more economical, or more efficient, than those of Georgia Power.

"Neither the trial court, nor this court on review, will substitute its own discretion and judgment for that of the Public Service Commission where it has exercised its discretion in a matter over which it has jurisdiction, and neither court will interfere with a valid order of the Public Service Commission unless it be clearly shown that the order is unreasonable, arbitrary, or capricious." *Atlanta Motor Lines v. Ga. Public Service Commission,* 211 Ga. 698 (1) (88 SE2d 387); *Woodside Transfer &c. Co. v. Ga. Public Service Commission,* 212 Ga. 625 (1) (94 SE2d 706); *Tamiami Trail Tours v. Ga. Public Service Commission,* 213 Ga. 418, 425 (99 SE2d 225); *Brown Transport Corp. v. Pilcher,* 222 Ga. 276 (3) (149 SE2d 670).

We can not say that the Georgia Public Service Commission abused its discretion in selecting the investment-

income ratio method of fixing service charges for URD. The evidence does not demonstrate that this method creates a monopoly or constitutes an illegal restraint of trade. It does not violate the provisions of *Code* § 93-309 requiring the Commission to make rules to prevent the giving of rebates and bonuses.

The plan of the Commission for determining the service charge for URD is reasonable, and does not constitute an illegal discrimination between different classes of consumers. The evidence supported the factor of 1.6 used in the formula.

The trial court did not err in refusing to enjoin the enforcement of the Commission's order.

*Judgment affirmed. All the Justices concur.*