
**CONSOLIDATED FREIGHTWAYS, Inc., v. UNITED STATES.**

No. 12403.

Circuit Court of Appeals, Eighth Circuit.

July 6, 1943.

Rehearing Denied Aug. 13, 1943.

Donald A. Schafer, of Portland, Or., for appellant.

Harry Lashkowitz, Asst. U. S. Atty., of Fargo, N. D., and Colin A. Smith, Sp. Asst. to U. S. Atty., of Chicago, Ill. (Powless W. Lanier, U. S. Atty., of Fargo, N. D., on the brief), for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is from a judgment rendered by the court after trial without a jury, finding the appellant guilty of violations of Part II of the Interstate Commerce Act, particularly 49 U.S.C.A. § 306 (a), as charged by criminal information against it in 117 counts, and imposing a fine of Fifteen Dollars in respect to each count, and costs.

Appellant is a common carrier by motor vehicle in interstate commerce between Minneapolis, Minnesota, and Seattle, Washington, and between various points and places in the states of Montana, Idaho,

Washington, Oregon and California, and is the successor to Consolidated Freight Lines, Inc. A portion of its operations are authorized by certificates of public convenience and necessity issued by the Interstate Commerce Commission, and the remainder are being conducted without such certificates under claim of "grandfather" rights, under the first proviso of 49 U.S.C.A. § 306(a). There is no question that appellant is subject to the terms of the Act.

On February 12, 1936, it applied to the Commission under the "grandfather" clause of Section 306(a), for operating rights as a common carrier by motor vehicle between Marmarth, North Dakota, and Miles City, Montana, over U. S. Highway No. 12, and said application was denied by order of the Commission, January 11, 1939, 11 M.C.C. 131. On January 10, 1938, it filed application with the Commission for a certificate of public convenience and necessity between Marmarth, North Dakota, and Miles City, Montana, over U. S. Highway No. 12, and said application was denied by order of the Commission, January 17, 1941, 27 M.C.C. 705. No certificate has been issued to it by the Commission between those points on that highway. But it claimed that it had the right to so operate and declared its intention to continue.

Accordingly, the Interstate Commerce Commission instituted action against it in the U. S. District Court in North Dakota, under authority of 49 U.S.C.A. § 322 (b), alleging that such operations of appellant were unlawful and in violation of the Act, and praying that appellant be enjoined therefrom. After trial the court granted the injunction as prayed, the opinion of the court being reported, Interstate Commerce Commission v. Consolidated Freightways, D.C., 41 F.Supp. 651.

The criminal information in this case was brought under 49 U.S.C.A. § 306(a), and 49 U.S.C.A. § 322(a), which provide in part:

"No common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operation on any public highway * * * unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations."

"Any person knowingly and willfully violating any provision of this chapter, or any rule, regulation, requirement, or order thereunder, or any term or condition of any certificate * * * for which a penalty is not otherwise herein provided, shall, upon conviction thereof, be fined not more than $100 * * *. Each day of such violation shall constitute a separate offense."

Each of the 117 counts of the information charged appellant on separate days between March 21, 1941, and August 13, 1941, with unlawfully transporting on public highway from Marmarth, North Dakota, which is on U. S. Highway No. 12, to a specified destination and consignee in Montana, Idaho, Washington, Oregon or California, without a certificate of public convenience and necessity, shipments of property from a designated consignor at St. Paul or Minneapolis, Minnesota. The substance of the charge in each count is illustrated by Count I, as follows: "That on, to wit, March 21, 1941, Consolidated Freightways, Inc., a corporation, defendant, then and there being a common carrier by motor vehicle * * * for compensation, unlawfully did knowingly and wilfully engage in an interstate operation on a public highway in that it did transport by motor vehicle * * * from Marmarth, * * * North Dakota * * * to Seattle, Washington, for Minnesota Mining and Manufacturing Company, St. Paul, Minnesota, consignor, certain property, to wit, 2 bundles, 13 rolls, 6 boxes abrasive paper, 1 drum polishing compound, consigned to Minnesota Mining and Manufacturing Company, Seattle, Washington, for compensation, to wit, $27.74, then and there without there being in force with respect to defendant a certificate of public convenience and necessity issued by the Interstate Commerce Commission authorizing such interstate operations."

Although appellant pleaded not guilty, it stipulated on the trial that it performed the transportation alleged in each of the 117 counts on the dates specified, that the transportation was performed over U. S. Highway No. 12 from Marmarth, North Dakota, to the described destinations in other states, and that it charged and collected compensation as stated in the information. It offered no rebuttal to the proof of the government that it had applied to the Commission for operating rights under the "grandfather" clause and for certificate of public convenience and necessity over U. S. Highway No. 12, out of Marmarth, North Dakota, and had been refused, and that no certificate for that operation had been issued to it, and on this

appeal it stipulates and agrees that it was denied "grandfather" clause rights and a certificate of convenience and necessity specifically covering its use of Highway No. 12 between Marmarth, North Dakota, and Miles City, Montana.

Its position is that being a lawfully authorized common carrier by motor vehicle on routes in North Dakota and Montana, it has a legal right to use the highway in question as a harmless alternative route between the terminal points of its lawful operations, and that under proper interpretation of the Act, restriction of its operations to particular highways, either by giving or refusing certificates, was not within the powers and functions of the Commission. It also contends that the judgment rendered in its favor in a prior prosecution against it for specified operations over the same highway in the year 1937 constitutes a bar to this prosecution under the doctrine of res adjudicata.

■ Appellant has argued that the wording of the Act regulating motor carriers whose administration is entrusted to the Interstate Commerce Commission, is ambiguous, and leaves an uncertainty whether the "routes" to be designated by certificates of necessity and convenience or under the "grandfather" clause, may be restricted to particular highways between the named points.

It also argues that even if no such ambiguity is found, it should be held that the true intent of the Act is that the carrier should be left free in the public interest and its own, to effect economies and more practical operations by resort to alternative "harmless" roads.

We think that when 49 U.S.C.A. §§ 306, 307, 308 and 309 are read together, the contention that there is ambiguity, as claimed, is plainly seen to be without merit. The words "route" and "routes" are manifestly used to signify the highways where the motor vehicles operate and not the areas between terminal points, and the regulation of the carriers prescribed by the Act entrusts the designation of routes in the public interest to the Commission. The Commission has consistently so construed the law in its administration. 11 M.C.C. 705.

In 11 M.C.C. 131, the Commission said:

"Applicant contends that the word 'routes' as used in the provision of Section 206(a) of the act with respect to granting of certificates to common carriers in bona fide operation on and after June 1, 1935, 'over the route or routes or within the territory for which application is made' refers only to service to and from a series of shipping points and does not include in its meaning the particular highways over which the carriers reach those points. It is contended that, in order to preserve the inherent flexibility of motor transportation, motor carriers should be permitted to use any and all available highways to serve the shipping points covered by State and interstate authorizations. Applicant outlined in detail the highways on which the points served are located and also set out the various alternative highways or 'short cuts' sometimes used by it in moving loaded and empty equipment to and from those points. The evidence discloses that applicant has operated over both the major routes and the 'short cuts' although it is not always shown whether such operations were in interstate or intrastate commerce. It here claims the right to use all of those highways in movements of loaded or empty vehicles. The movement of empty equipment as an incident to transportation of goods in interstate or foreign commerce is a transportation service subject to the act and to our requirements for operating authority, even though the empty movements are wholly within one State. Wasie Common Carrier Application, 4 M.C.C. 726, 729."

"Protestants urge that applicant's theory is contrary to our interpretation of the word 'routes', and that its acceptance would permit applicant to 'run wild over seven States' and prevent Federal cooperation with State officials in efforts to avoid congestion on particular highways."

"The term 'route' is not defined in the act. 'Highway' is defined in section 203 (a) (12) as 'the roads, highways, streets, and ways in any State.' In our certificates we have described routes in terms of particular highways, just as railroad routes, under Part I, are described in terms of particular lines of railroad. Section 208 (a) contains the following:

" 'Any certificate issued under section 206 or 207 shall specify the service to be rendered and the routes over which, the fixed termini, if any, between which, and the intermediate and off-route points, if any, at which, and in case of operations not over specified routes or between fixed termini, the territory within which, the motor carrier is authorized to operate.' "

· "Clearly it is contemplated that where specified points are to be served, the 'routes over which' the service is to be rendered shall also be named, and we know of no way of describing routes for motor carriers except in terms of highways."

In this prosecution the government did not rely upon findings of fact made by the Commission in its denial of operating rights to appellant, or by the district court in its award of injunction against appellant. The facts here were stipulated or proved. But the interpretation of the law by the administrative tribunal must be given due weight by the courts. We think the Commission's interpretation of the law is sound, that it acted within its powers in denying the appellant a certificate to operate over the route in question, and that appellant committed the offenses charged by operating without certificate.

In Noble v. United States, 63 S.Ct. 950, 87 L.Ed. ——, decided May 3, 1943, the Supreme Court considered the complaint of a contract motor vehicle carrier that the Commission had restricted him to hauling specified commodities over specified routes for specified shippers. He claimed that he should be allowed to haul the commodities over the routes for any one he chose. The court sustained the Commission's order and the opinion clearly recognizes the broad and exclusive power vested in the Commission to administer the Motor Vehicle Carriers Act. To hold here that the appellant had a right to carry on the operations charged and admitted without certificate from the Commission would conflict directly with the plain import of the Supreme Court's determination.

Lacking certificate from the Commission, appellant had no lawful right to operate over the route in question.

Neither are we persuaded that the appellant acquired or has become possessed of a legal right to operate on the U. S. Highway from Marmarth, North Dakota, without certificate by reason of the judgment in its favor in the criminal prosecution brought against it on account of the operations which it carried on over that highway in 1937. When it was prosecuted criminally for those operations it demurred generally to the information and it moved specially to quash on the ground:[1] 'That as is set out more particularly in the attached affidavit, the right of the defendant to operate between the points set out in the said Counts 1 to 48 inclusive, of the information, is before the Interstate Commerce Commission and that there has been no Order issued by the said Commission which has jurisdiction of this matter; that there can be no prosecution of the defendant until there has been a determination by the Interstate Commerce Commission of the defendant's right to operate as a common carrier between the points set out in the various Counts of the Information."

The question of the effect of the judgment in its favor in that case was considered by the district court in the injunction suit, 41 F.Supp. 651, supra, and we think the court's statement of what had been decided and its conclusion as to the effect of the judgment (41 F.Supp. loc. cit. 656), is in all respects sound. The court said:

"The last contention made by the defendant is to the effect that the order sustaining the demurrer to the counts of the information constitutes an adjudication of the questions here involved. The judge hearing the matter filed no memorandum. The demurrer was addressed to the sufficiency of the information and the matters therein stated. The violations charged in the information were prior to the date of the order of the Commission determining the rights of the defendant under its applications for authority. Operations by the defendant prior to February 14, 1939, over the route on which it claimed 'grandfather' rights were not in violation of the law, and that is, no doubt, what the Court ruled in sustaining the demurrer.

"We have here a new legal situation which has been created by the orders of the Commission denying the defendant authority. Operations have been carried on subsequent to the dates of such orders, and the 'precise' question in this case was not raised or determined in the criminal proceeding in which the demurrer was sustained. Under such circumstances the doctrine of res adjudicata has no application. See: Russell v. Place, 94 U. S. 606, 24 L. Ed. 214; De Sollar v. Hanscome, 158 U. S. 216, 15 S.Ct. 816, 39 L.Ed. 956."

As we find no error in appellant's conviction and sentence, it is affirmed.

[1] There were other grounds not mate-