STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION v.
QUEEN CITY COACH COMPANY.

(Filed 2 February, 1951.)

**1. Carriers § 5—**

The policy of the law controlling the granting of bus franchises is to provide adequate, economical and efficient bus service at reasonable cost to all communities of the State, without discrimination, undue privileges or advantages or unfair or destructive competitive practices, all to the end of promoting the public interest. G.S. 62-121.44.

**2. Utilities Commission § 5—**

Appeals from the Utilities Commission are confined to questions of law upon grounds specifically set forth in appellant's petition for rehearing by the Commission. G.S. 62-26.10.

**3. Utilities Commission § 3—**

The holder of a certificate operating buses serving communities included in the application of another company may intervene and protest the granting of the application. G.S. 62-121.52 (5).

**4. Same: Carriers § 5—**

The Utilities Commission is without authority to grant a franchise over a route served by another carrier except upon a finding that public convenience and necessity requires additional service over the proposed route, and then only after opportunity is afforded the other carrier to remedy such inadequacy, which it refuses or is financially unable or otherwise disqualified to do. G.S. 62-121.52 (7).

**5. Same—**

In order to grant an application by a carrier to serve communities then being served by another carrier, who intervenes and protests the application, as distinguished from an application for duplication of routes, it is not required that the Utilities Commission find that the existing carrier's service is inadequate and afford such existing carrier opportunity to remedy the inadequacy. G.S. 62-121.52 (7).

**6. Same—**

Where an existing carrier intervenes and protests another carrier's application to serve the same communities, the determinative question is the public convenience and necessity, and while the Commission is required to consider whether the proposed operations would unreasonably impair the efficient public service of the protesting carrier, this is not determinative unless it would so seriously endanger and impair the operations of the existing carrier as to be contrary to the public interest.

**7. Same—**

"Route" as used in Chap. 1132, Session Laws of 1949, means the highway or road traveled in serving communities, districts, or territories adjacent to it, and is not synonymous with "territory."

**8. Same—**

    G.S. 62-121.52 (7) does not purport to protect against all competition but is designed to protect authorized carriers against ruinous competition, and the statute does not prohibit service of the same points by different carriers over separate routes when such duplicate service is in the public interest.

**9. Same—**

    G.S. 62-121.52 (7) prohibits the granting of a franchise over any part of the route of an existing carrier except upon the prescribed conditions, and not merely a duplication of the same route from *terminus* to *terminus*, but the application to serve communities being served by the intervening carrier need not be denied *in toto* because there would be a duplication of routes along a short distance, since the existing carrier may be protected as to the duplication in route by proper restrictions in the certificate. G.S. 62-121.53, G.S. 62-121.54.

APPEAL by defendant from *Clement, J.,* September Term, 1950, GUILFORD.

Application by Gate City Transit Lines, Inc., before the Utilities Commission for a passenger bus franchise, heard in the court below on appeal from the Utilities Commission.

The defendant, Queen City Coach Company (hereinafter referred to as Queen City), is a franchise carrier of passengers, and as such operates buses from Greensboro over Highway 22 south through Ramseur to Coleridge. It also operates buses from Greensboro south over Highway 421 through Julian and Liberty to Siler City and Fayetteville. The Gate City Transit Lines, Inc. (hereinafter referred to as Gate City), now holds a franchise to operate buses over an entirely different route from Greensboro to Kimesville. It applied for and obtained, over the protest of Queen City, a franchise certificate to operate buses over a route branching off from, its Greensboro-Kimesville route along an un-numbered road 4.4 miles to Highway 62, thence on Highway 62, 2.7 miles to Julian, thence on Highway 421, 7.5 miles to Liberty, thence along Highway 49, 9 miles to Ramseur.

Thus the proposed new route duplicates the route of Queen City from Julian to Liberty and also duplicates service rendered the Ramseur-Greensboro and also the Liberty-Julian-Greensboro communities.

Queen City intervened and protested the granting of the application for that the proposed route (1) will duplicate in part its bus line from Greensboro through Julian and Liberty to Siler City; (2) will duplicate the service now rendered by it to the community of Ramseur, and (3) will provide harmful competition and be destructive of its present service now being rendered to the communities the proposed route is designed to serve.

The hearing commissioner granted the franchise extension from the Greensboro-Kimesville route to and from Julian and declined to permit the extension from Julian to Ramseur. On appeal, the full Commission found (1) that convenience and necessity are clearly established in respect of that part of the proposed route allowed by the examining commissioner, (2) "all the testimony indicates an adequacy of service between Liberty and Julian, a distance of 7.5 miles on Highway 421," (3) it is "apparent that revenues derived between said points would be insufficient to adversely affect the over-all operations of the protestants or enhance the over-all operation of the applicant," and (4) "that extending the applicant's route southeastwardly along Highway 421, 7.5 miles, to the town of Liberty; thence southwardly 9 miles along Highway 49 to the town of Ramseur, would provide transportation for those people who live along the boundaries of Highway 49 between Liberty and Ramseur, which is now not provided by any other certified carrier . . ."

It then made the following finding or conclusion: "The Commission is of the opinion that generally the type of operation and the type of service applied for by the applicant is in the interest of the public and in accordance with the provisions of the Bus Act of 1949 . . ."

Queen City duly filed exceptions. The exceptions were overruled, and it appealed to the Superior Court.

The cause was heard in the Superior Court on the record certified by the Utilities Commission, and being heard, the court entered judgment affirming the order of the Commission. Queen City excepted and appealed.

*Attorney-General McMullan and Assistant Attorney-General Paylor for plaintiff appellee.*

*Welch Jordan for Gate City Transit Lines, Inc., appellee.*

*Brooks, McLendon, Brim & Holderness, Shearon Harris, and Vaughan Winborne for defendant appellant.*

BARNHILL, J. The Legislature, by c. 989, Session Laws 1949, revamped Art. 2 of c. 62 of the General Statutes prescribing the procedure in hearings before the Utilities Commission. The statute, as revised, makes substantial changes in the method of procedure before this agency of the State.

Likewise the law controlling the granting of certificates for the operation of buses for the transportation of passengers was completely revised by c. 1132, Session Laws 1949. Art. 6 of c. 62 of the General Statutes was repealed and a new statute, now G.S. c. 62, Art. 6c, was enacted. The provisions of these new statutes render some of our former decisions of doubtful value.

The policy of the State in respect of the transportation of passengers for hire as declared in s. 2 of c. 1132, Session Laws 1949, now G.S. 62-121.44, is to provide adequate, economical, and efficient bus service at reasonable cost to all the communities of the State, without discrimination, undue privileges or advantages or unfair or destructive competitive practices.    The dominant object of the legislation is to promote the public interest.

Appeals from the Utilities Commission are confined to questions of law, and on appeal the appellant may not rely upon any grounds for relief which are not set forth specifically in his petition for rehearing by the Commission.   G.S. 62-26.10.

Any holder of a certificate now operating buses which serve communities included in the proposed bus route may intervene and protest the granting of the application, G.S. 62-121.52 (5), and the Commission "shall give due consideration to . . . (b) whether the proposed operations will unreasonably impair the efficient public service of carriers operating under certificates."   G.S. 62-121.52 (10).   "No certificate shall be granted to an applicant proposing to serve a route already served by a previously authorized motor carrier unless and until the commission shall find from the evidence that the service rendered by such previously authorized motor carrier or carriers on said route is inadequate to meet the requirements of public convenience and necessity;" and in no event before the certificate holder operating on said route or routes shall be given reasonable time to remedy such inadequacy.   G.S. 62-121.52 (7).

The applicant must show that "public convenience and necessity" requires additional service over the proposed route.   If that fact is made to appear, then the Commission must first afford the protesting bus company operating over the same route an opportunity "to remedy such inadequacy."   If the authorized carrier refuses, or is financially unable, or otherwise disqualified, to render the service "found by the commission (to be necessary) to meet the requirements of public convenience and necessity" then, and only then, may the Commission issue a certificate to the applicant to operate over the route already served by the protesting carrier.   G.S. 62-121.52 (7).

The petition of appellant for a rehearing by the Commission is bottomed squarely on the contentions that (1) the evidence discloses that it now serves the Ramseur-Greensboro, Liberty-Greensboro, and Julian-Greensboro territories over its bus lines operated on Highways 421 and 22; that G.S. 62-121.52 (7) relates to point-to-point service; and that therefore the Commission erred in authorizing additional service between these points "without a finding of fact that the existing service is inadequate and affording this protestant an opportunity of remedying the inadequacy"; (2) the Commission authorized a duplication of service

over one of its routes between Liberty and Julian upon the finding "that the revenue derived between said points would be insufficient to adversely affect the over-all operation of the protestant or enhance the over-all operation of the applicant" when the statute makes inadequacy of existing service and refusal to remedy such inadequacy the basis for granting a certificate to the applicant; and (3) the Commission failed to give consideration to its exceptions to the recommended order of the examining commissioner.

The appellant is limited to these contentions on this appeal. G.S. 62-26.10. Any other question of law raised by its exceptions entered in the court below may not be considered here.

Thus it appears that the appellant relies on the assertion that the order of the Commission is in excess of statutory authority and affected by errors of law. G.S. 62-26.10.

It is true the statute affords authorized carriers serving the communities which compose links in the proposed route an opportunity to intervene and oppose the application, and requires the Commission to consider whether the proposed operations will unreasonably impair the efficient public service of other carriers. But the effect upon other carriers is directed to the question of public convenience and necessity. It is not determinative of the right of the Commission to grant the application.

The grant of a franchise is predicated upon public convenience and necessity, as that term is defined in *Utilities Commission v. Trucking Co.,* 223 N.C. 687, 28 S.E. 2d 201. An affirmative finding thereof is a condition precedent. If the proposed operations would endanger or seriously impair the operations of existing carriers contrary to the public interest, the certificate should not be issued. But here we have passed that hurdle. The Commission found that the proposed service is in the public interest.

That Queen City now serves the same communities over routes other than the one proposed by the applicant does not require the Commission, upon the finding of public convenience and necessity, to afford the authorized carrier, protestant, an opportunity to remedy the inadequacy. That is, service of the same communities between the same points but over different routes does not constitute service of a route already served, within the meaning of the Act.

The original bill which, as revised in the Legislature, became c. 1132, Session Laws 1949, required the Commission to deny duplicate service in the same territory, but "territory" was stricken and "route" was inserted in its stead. For us now to construe the Act to accord with the contention of Queen City would necessitate the adoption of the identical meaning which the Legislature expressly rejected. The General Assembly fixes the policy of the State, and it was unwilling to go further than to prohibit a duplication of service over the same route unless the existing

authorized carrier is unwilling to remedy the inadequacy found by the Commission. The policy as thus expressed must control decision here.

"Route" as used in the statute means the course of way which is traveled; the road. Webster's New Int. Dic., 2d Ed. "Route" is the direction of travel from one place to another. *Virginia Stage Lines v. Commonwealth,* 45 S.E. 2d 318. As used in statutes regulating motor carriers "route" means the highway or highways over which motor vehicles operate and not areas between terminal points. *Consolidated Freightways v. U. S.,* 136 F. 2d 921.

Carriers are not certified to operate in a certain "territory" but over a designated "route." The route or road to be traveled serves the communities, districts, or territories adjacent to it. It follows that "route" and "territory" are not synonymous. *Virginia Stage Lines v. Commonwealth, supra.*

The area of protection against duplication afforded by the statute is the specific route covered by the certificate of the authorized carrier rather than the territory it serves.

So then, the Commission, having found that public convenience and necessity require the additional service, was not required to give Queen City an opportunity to render the additional service between the Ramseur-Greensboro, Liberty-Greensboro, and Julian-Greensboro points, which are common to both routes.

While the statute is designed to protect authorized carriers against ruinous competition, it does not purport to protect against all competition. There is nothing in the statute to prohibit the service of the same points by different carriers over separate routes when it is found by the Commission that such duplicate service is in the public interest.

But there is a duplication of routes as well as of service between Liberty and Julian. The Commission has found that existing conditions do not demand this duplication. "All the testimony indicates an adequacy of service between Liberty and Julian." This being true, the Commission was without statutory authority to permit the duplication. The prohibition is positive. "No certificate shall be granted to an applicant proposing to serve a route already served by a previously authorized motor carrier unless and until the commission shall find from the evidence that the service rendered by such previously authorized motor carrier . . . on said routes is inadequate . . ." G.S. 62-121.52 (7).

To hold that this provision applies only when there is a duplication over the same route from terminus to terminus would require an unrealistic construction of the statute. If other carriers can invade the route of an authorized carrier, piecemeal fashion, then the Legislature completely failed to accomplish one of its declared objectives—the prevention of destructive competition. If the statute authorizes a duplica-

tion between points only 7.5 miles apart, it likewise permits such duplication between points 50 or 100 miles apart, including all intermediate points. Considering the provision in the light of the policy set forth in the Act, any such construction is precluded.

The revenue derived from passengers traveling between these two points is nominal. Only a very short distance is involved. Neither carrier would be seriously affected if it lost all the business the two points provide. Therefore, frankness compels us to say that if this case stood alone we would be strongly inclined to pass the question as too insignificant to command our attention. But such is not the case. Our decision here will become a precedent and control decision in other cases of much greater moment. No doubt this is what Queen City had in mind in contesting the decision of the Commission.

The mere fact that the two carriers will use the same highway for a short distance does not require the denial of the application *in toto*. A traversing of the same highways for certain distances by competing carriers may readily become necessary in the public interest and in such an instance, more than one certificate may be granted, subject to such restrictions as will protect the authorized carrier in respect of that part of the highway to be traversed by both. G.S. 62-121.53 and .54. Under a proper construction of the statute, with public convenience and necessity for bus service from Ramseur to Greensboro over the proposed route fully established, grounds for granting of the proposed application, subject to the indicated restrictions, are made to appear.

The exception for that the Commission failed to give consideration to its exceptions to the report of the examining commissioner, contained in its petition for a rehearing, is not brought forward. In any event, on this record, it is without substantial merit.

The cause is remanded with instructions that the proceeding be recommitted to the Commission for consideration of the proper restrictions to be imposed upon the proposed certificate in accord with this opinion.

Error and remanded.