**John T. BURKE, Appellant,**

v.

**CENTRAL EDUCATION AGENCY,
et al., Appellees.**

No. 14478.

Court of Appeals of Texas,
Austin.

Nov. 27, 1985.

Rehearing Denied Jan. 8, 1986.

Leonard J. Schwartz, B. Craig Deats, Schwartz, Waterman, Fickman & Van Os, Austin, for appellant.

Jim Mattox, Atty. Gen., George Warner, Asst. Atty. Gen., Austin, for Central Educ. Agency.

Henry D. Akin, Akin & Akin, Dallas, for Plano Independent School Dist.

Before POWERS, EARL W. SMITH and BRADY, JJ.

POWERS, Justice.

A Travis County district court rendered summary judgment against John T. Burke in his suit against the Central Education Agency and the Plano Independent School District.[1] We will reverse the judgment and remand the cause to the trial court.

---

1. Under the Texas Education Code Ann. (1972 & Supp. 1985), public education in Texas is gov-

Burke alleged in his original petition that his "cause of action is an appeal from a final order of the State Board of Education." It is couched generally in the familiar terms applicable to a suit for judicial review of a final order rendered by a State agency in a contested case, when that suit is governed by the provisions of § 19 of the Texas Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ. Stat.Ann. art. 6252–13a (Supp.1985).[2] The

erned jointly by local school officials and the Central Education Agency (*Id.* at § 11.01). *See generally, Spring Ind. School Dist. v. Dillon,* 683 S.W.2d 832 (Tex.App.1984, no writ). The Central Education Agency is composed of four entities: (1) the State Board of Education, a body charged to formulate policies and rules "for carrying out the duties placed on it or the Central Education Agency by the legislature" (§§ 11.21, 11.24); (2) the State Board of Vocational Education, a body composed of the members of the State Board of Education when they act in matters concerned with vocational education (*Id.*); (3) the State Department of Education, which is the professional, technical, and clerical staff of the Central Education Agency (§ 11.61); and, (4) the Commissioner of Education. The Commissioner's duties include: the general duty of executing the school laws and the rules and regulations of the State Board of Education; the power to interpret the rules and regulations of the State Board of Education; and the duty to perform adjudicative functions, together with the State Board of Education, in deciding appeals taken from the decisions of local school authorities (§ 11.13(a), (b)).

Plano Independent School District is a governmental entity which like all such independent school districts is "under the control and management of a board of seven trustees" (§ 23.01). Such local boards are themselves given important powers of rulemaking and adjudication. (*See e.g.,* §§ 2.06, 3.06, 13.046, 13.-104, 13.112, 13.113, 21.205, 23.26(d)).

2. We shall summarize the substantive allegations contained in Burke's original petition in district court:

He had exhausted his administrative remedies by his administrative appeals to the Commissioner and to the State Board of Education, including the filing of a motion for rehearing before the Board, which had been overruled.

The "actions and decisions by the Agency" amounted to a "declaration" that Burke "was entitled to no relief for the nonrenewal of" his contract with Plano.

"[T]he administrative findings, inferences, conclusions and decisions of the Agency were arbitrary, capricious and unlawful; not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole; and ... the administrative rulings were based upon incorrect interpretations of applicable law."

The "Agency" failed to comply with APTRA in the following respects:

a. "The Agency's decision did not include a ruling on each proposed finding of fact submitted by [Burke] to the Agency in accordance with agency rules, in violation of" APTRA § 16(b).

b. Burke "was not afforded an opportunity for a hearing before the Agency, nor did [he] ever receive a notice in compliance with" APTRA § 13(b).

c. "In violation of" APTRA § 13(d), Burke "was not afforded the opportunity to respond and present evidence and argument on all issues involved."

d. Burke "was not allowed to conduct cross-examinations which were necessary for a full and true disclosure of the facts, in violation of" APTRA § 14(p).

"There is no legal record upon which the decision of the agency is based."

Because Plano failed "to comply with The Term Contract Nonrenewal Act," Burke "was contractually entitled to continued employment with" Plano.

The "actions and inactions" of Plano described in Burke's petition for review by the Commissioner (attached to Burke's trial-court petition) "breached the contractual and statutory obligation owed by" Plano to Burke.

Burke possessed a property interest in his contract of employment and was denied due process of law, in violation of U.S. Const. Ann. amend. 14, by Plano's failure to "grant" Burke "the rights due to a teacher facing nonrenewal." (The balance of this allegation is illegible on the transcript copy of Burke's trial-court petition.)

"The Agency erred in determining that a teacher can waive his or her new contract which is automatically awarded by operation of law on April 2 of the contract year by asking for a hearing after the contract is awarded."

In Burke's prayer for relief, he requested judgment setting aside "the combined decisions of the Commissioner and the State Board of Education" concerning the nonrenewal of his contract, as well as the decision of Plano; a declaratory judgment that Burke's nonrenewal was contrary to The Term Contract Nonrenewal Act; judgment reinstating him as a teacher in the Plano Independent School District; money damages "for all economic loss sustained as a result of the wrongful actions and inactions of" Plano; expungement from Burke's personnel file of any reference to the "discontinuance" of his employment; costs and attorney's fees; and general relief.

ultimate question on appeal is whether the provisions of APTRA govern Burke's suit.

In his petition, Burke complains that Plano did not renew his term contract of employment (as a teacher) and that the Commissioner of Education and the State Board of Education erred in not reversing Plano's decision. Burke contends that the actions of the local and State officials were erroneous under a State statute—The Term Contract Nonrenewal Act.[3]

---

**3.** Sections 21.201 through 21.211 of the Texas Education Code Ann. constitute "The Term Contract Nonrenewal Act," a statute that became effective August 31, 1981. We shall summarize its provisions as they presently exist.

The board of trustees of each school district is required to provide, by written policy, for the periodic evaluation of its teachers and these evaluations are one consideration applicable to any board decision not to renew a teacher's "term contract" (§ 21.202). The expression "term contract" is defined as "any contract of employment for a fixed term between the school district and a teacher" (§ 21.201(4)). In addition to such periodic evaluations, a board decision not to renew a teacher's contract may also rest upon such other considerations as the board of trustees may establish in "policies" it is required to promulgate in that regard (§ 21.203(b)). These must include whether the teacher has taken and performed satisfactorily on certain examinations. (*Id.*). Another consideration implicit in the statute is the recommendation of administrative officials of the district, for it is provided that the district must "establish policies and procedure for receiving recommendations from its school administration for the nonrenewal of teacher term contracts, ...." (§ 21.203(c)).

Any decision not to renew a teacher's term contract must follow certain procedures set out in the Code. They are as follows:

a. If the board of trustees receives a recommendation that a teacher's contract not be renewed (evidently a recommendation from the administrative officials of the district), it shall consider the reasons set forth in the recommendation as well as the teacher's periodic evaluations. It may then, "in its sole discretion," reject the recommendation or notify the teacher in writing of the administration's proposal not to renew his contract. The notice must include a statement of the reasons upon which the proposal rests (§ 21.204).

b. Unless the above notice be given the teacher before April 1 preceding the end of the employment term fixed in his contract, his contract is renewed by operation of law—that is to say, by operation of § 21.204(b), which provides that unless such notice be given before April 1 "the board of trustees shall thereby elect to employ such [teacher] in the same professional capacity for the succeeding school year."

c. A teacher receiving a notice of the administration's proposal not to renew his contract may obtain a hearing on the proposal "conducted in accordance with rules promulgated by the district" (§ 21.205). To obtain the hearing, the teacher must, within 10 days of receiving the notice, notify the board of trustees of his desire for a hearing, which may be "closed" or "open" according to the teacher's request. (*Id.*) The hearing shall be held before the board of trustees within 15 days of its receipt of the teacher's request for a hearing and in accordance with rules promulgated by the district. (*Id.*)

d. The decision of the board of trustees is governed by the provisions of § 21.206 of the Code, which we shall quote:

(a) If the teacher fails to request a hearing, the board shall take such action as it deems lawful and appropriate and shall notify the [teacher] in writing of that action within 15 days of the expiration of the 10-day period for requesting a hearing.

(b) If the teacher requests a hearing, the board shall take such action as it deems lawful and appropriate and shall notify the teacher in writing of that action within 15 days following the conclusion of the hearing.

e. The Code, in § 21.207, provides in the following language for *administrative* review by the Commissioner of Education, as well as for *judicial* review of the Commissioner's decision:

(a) If the teacher is aggrieved by the decision of the board of trustees, he may appeal to the State Commissioner of Education *pursuant to Section 11.13 of this code. The commissioner may not substitute his judgment for that of the board of trustees, unless the decision below was arbitrary, capricious, unlawful, or not supported by substantial evidence.*

(b) Either party may appeal the commissioner's decision to a district court in Travis County.

(emphasis added). Section 11.13 of the Code, referred to in the foregoing quotation, formerly provided as follows:

(a) Persons having any matter of dispute among them arising under the school laws of Texas or any person aggrieved by the school laws of Texas or by actions or decisions of any board of trustees or board of education may appeal in writing to the commissioner of education, who, after due notice to the parties interested, shall hold a hearing and render a decision without cost to the parties involved, but nothing contained in this section shall deprive any party of any legal remedy.

(b) The decisions of the commissioner of education shall be subject to review by the State Board of Education.

Plano and the Agency appeared and answered in Burke's suit. They then moved for summary judgment on the ground that Burke's motion for rehearing, filed in the Agency proceeding, was so lacking in specificity that it did not satisfy the prerequisite for judicial review established in APTRA § 16(e).[4] The trial court sustained the motions for summary judgment filed by Plano and the Agency. Burke appealed to this Court as provided in APTRA § 20.

Burke contends here that the trial court erred in its summary judgment because his motion for rehearing *was* sufficiently specific to apprise the Agency of his contentions of error in the proceeding conducted

before it.[5] Plano and the Agency urge the opposite interpretation of Burke's motion. All parties agree fundamentally upon the degree of specificity the law requires in such motions—they must be sufficient to apprise the agency of the error claimed so that the agency may correct it or prepare to defend against the claim that it is error. Suburban Utility Corporation v. Public Utility Commission of Texas, 652 S.W.2d 358 (Tex.1983). We conclude, however, that we need not decide whether Burke's motion is sufficiently specific to preserve on judicial review the errors he attributes to the Agency in not reversing the decision of Plano. In our view, he was not required to

---

(c) Any person, county, or school district aggrieved by any action of the Central Education Agency may appeal to a district court in Travis County, Texas.... The petition shall state the action from which the appeal is taken, and if the appeal is from an order of the State Board of Education, shall also set out the order, or relevant portion thereof. Upon trial the court shall determine all issues of law and fact.

In 1984, the foregoing version of § 11.13 was amended. The amendment added a provision not applicable here and permitted suits for judicial review to be directed at either the "action of the Central Education Agency" or the "decision of the commissioner of education," eliminating the former requirement that an administrative appeal be taken to the State Board of Education from a decision of the commissioner before bringing a suit for judicial review. Concurrently, § 21.207, a section of "The Term Contract Nonrenewal Act," was amended to delete the provision for appeal from the Commissioner's decision, in cases under that Act, to the State Board of Education. We have quoted above § 21.207 as it presently reads. At the times applicable to Burke's case, § 21.207 provided for appeal to the State Board of Education, a review he invoked and obtained in the present case.

4. Section 16(e) of APTRA provides:
Except as provided in Subsection (c) of this section, a motion for rehearing is a prerequisite to an appeal....
The exception referred to in the foregoing passage is as follows:
If an agency finds that an imminent peril to the public health, safety, or welfare requires immediate effect of a final decision or order in a contested case, it shall recite the finding in the decision or order as well as the fact that the decision or order is final and effective on the date rendered, in which event the decision or order is final and appealable on the

date rendered and no motion for rehearing is required as a prerequisite for appeal.
The exceptional circumstances are not applicable in the present case.

5. Burke's motion for rehearing assigned the following errors:
1. "Petitioner hereby incorporates by reference the papers and records already on file in this cause and, in addition to the errors demonstrated in such papers, relies upon the following as additional basis for this motion:
2. "The State Board of Education erred by generally affirming the Commissioner of Education and by adopting his findings of fact and conclusions of law. These conclusions were based upon erroneous application of legal principals [sic] to the facts found.
3. "The State Board of Education erred by generally finding that the decision of the respondent [Plano] was not arbitrary, capricious, unlawful and that it was supported by substantial evidence.
4. "The State Board of Education erred by implicitly finding that the procedures below did not violate the Administrative Procedure and Texas Register Act.
5. "The State Board of Education erred when it adopted the findings of fact found by the Commissioner of Education.
6. "The State Board of Education erred when it adopted the findings of fact found by the Commissioner of Education.
7. "The State Board of Education erred in determining [sic] that a teacher can waive a new contract which is awarded by operation of law on April 2 of the contract year by asking for a hearing after the contract is awarded."
We express no opinion as to the sufficiency of these assignments of error, to preserve error, since we hold that APTRA § 16(e) does not apply to Burke's case. Several of them appear very doubtful in that regard.

file any motion for rehearing at all in order to preserve his contentions of error.

The requirement of a motion for rehearing, filed in an administrative agency and objecting to its decision, is a familiar statutory prerequisite to the complaining party's right to seek judicial review of the decision.[6] It is not, however, a universal requirement. For example, the model act from which APTRA is basically derived does not include such a requirement.[7] Unless a statute requires to the contrary, a motion for rehearing is generally not a prerequisite to judicial review.[8] In the present case, it is axiomatic that unless APTRA itself applies to Burke's suit for judicial review, § 16(e) of that statute does not apply; and if § 16(e) does not apply, Burke was not required to file in the agency *any* motion for rehearing in order to preserve his contentions of error.

The applicability of APTRA to the present case has been assumed by all the parties. We conclude, however, that APTRA unquestionably does *not* apply to the Agency's administrative review of the actions or omissions of a local school board under The Term Contract Nonrenewal Act. Consequently, Burke was not obliged to file in the Agency any motion for rehearing and the trial court erred in awarding summary judgment on the ground that such a motion was a "prerequisite" to Burke's authority to sue for judicial review of the Agency's decision.

Burke's claim, regarding his teaching contract, and the corresponding duties of Plano and the Agency, derive solely from The Term Contract Nonrenewal Act, which we have summarized in a footnote.[9] Should a dispute arise under that statute, it must be adjudicated first in a hearing before the governing body of the school district. The hearing is a trial-type hearing as in district court, characterized by representation by counsel, introduction of evidence, cross-examination of witnesses, legal argument, briefs, and other trial-type procedures. 19 Tex.Admin.Code §§ 61.231–.252. The requirement for this *kind* of adjudicatory hearing applies to various kinds of disputes required to be adjudicated by a local board of trustees—it is not limited solely to disputes arising under The Term Contract Nonrenewal Act. *See, e.g., Spring Ind. School Dist. v. Dillon,* 683 S.W.2d 832 (Tex.App.1984, no writ). But in cases arising under the Term Contract Nonrenewal Act, it is quite clear that *the local board of trustees,* and not the Commissioner, makes *original* original fact findings and determinations of the law and administrative policy.

The Term Contract Nonrenewal Act as well as § 61.251(2) of the Agency regulations contemplate that a decision of the local school board of trustees may be appealed to the Commissioner of Education for administrative review by that officer, and to the State Board of Education for further administrative review of the Commissioner's decision.

**6.** *See, e.g., Public Utility Dist. No. 1 v. Federal Power Com'n,* 242 F.2d 672 (9th Cir.1957) (Federal Power Act § 313(b)); *Alexander v. State Personnel Board,* 137 P.2d 433, 22 Cal.2d 198 (1943) (Civil Service Act § 173(c)); *Peak v. Industrial Accident Board,* 82 Cal.App.2d 926, 187 P.2d 905 (1947) (Labor Code § 5904); *Meinhardt Cartage Co. v. Illinois Commerce Com'n,* 15 Ill.2d 546, 155 N.E.2d 631 (1959) (Public Utilities Act § 67); *Granite City v. Illinois Commerce Com'n,* 407 Ill. 245, 95 N.E.2d 371 (1950) (same); *State v. Queen City Coach Co.,* 233 N.C. 119, 63 S.E.2d 113 (1951) (G.S. § 62–26.10); *Omernick v. Dept. of Natural Resources,* 100 Wis.2d 234, 301 N.W.2d 437 (1981) (Stats. § 196.405, 1959). The general tenor of these holdings is that the statutory requirement of a motion for rehearing is a prerequisite to judicial review because it is an administrative "remedy" that the plaintiff must "exhaust" before invoking his right to judicial review. Consequently, he "waives" any objections, irregularities, and illegalities in the agency except those preserved by his motion. The federal case first cited is interesting because it holds that the subsequent enactment of the Federal Administrative Procedure Act did not void the statutory requirement for a motion for rehearing found in the Federal Power Act.

**7.** Model State Administrative Procedure Act (U.L.A.) (1961).

**8.** *See generally* 73 C.J.S. § 39, pp. 458–61 (1983).

**9.** See fn 3, *supra.*

Other parts of the Code make similar provisions for appeal to the Commissioner and the Board from other determinations made by a local board of school trustees. In such appeals generally, the Commissioner's review is not limited to reviewing a record compiled in connection with the local-board hearing and adjudication. Instead, the Commissioner receives evidence anew and makes his own fact findings and applications of law. 19 Tex.Admin.Code §§ 157.41–.58. This clearly is *not* the case, however, with regard to the Commissioner's administrative review of adjudications by a local board of school trustees under The Term Contract Nonrenewal Act. Section 21.207 of that statute provides quite explicitly for a *different kind* of administrative review:

> (a) If the teacher is aggrieved by the decision of the board of trustees, he may appeal to the State Commissioner of Education pursuant to Section 11.13 of this code. *The Commissioner may not substitute his judgment for that of the board of trustees, unless the decision below was arbitrary, capricious, unlawful, or not supported by substantial evidence.*

(emphasis added). The emphasized portion of § 21.207(a) directs in unmistakable terms that the Commissioner, in his administrative review of adjudications made under The Term Contract Nonrenewal Act, shall conduct a review based upon the record compiled by the local board, the scope of the Commissioner's review being to determine if the local board's decision was arbitrary, capricious, or unlawful, or if its findings of fact are not supported by substantial evidence. The Commissioner is specifically *precluded* from substituting his own judgment as to such matters; that is to say, he may not make the findings of fact or applications of law or administrative policy that the local board should have

made. The record in the present case reflects that the Agency so construed § 21.-207 of the Act and that the Commissioner proceeded accordingly in Burke's appeal to him. The Commissioner's review was therefore limited to the record compiled before the local board of school trustees and his "findings of fact" and "conclusions of law" are really his determinations about whether the local board acted arbitrarily, capriciously, unlawfully, or without substantial evidence in its application of law and policy and in its findings of fact.

We believe, and hold, that the Agency has in this respect correctly construed § 21.207 of the Act. We might add that § 21.207 appears to represent a sensible orchestration of the authority of local school boards and that of the Agency, a matter discussed at length in *Spring Ind. School Dist. v. Dillon, supra,* at 840.

Against the form and scope of administrative review contemplated by § 21.207 and applied in the present case by the Commissioner, we must compare the scope and applicability of APTRA to determine whether the administrative proceedings we now review fall within APTRA generally, so that a motion for rehearing must be filed in the Agency as a prerequisite to any suit for judicial review under APTRA § 19.

It is beyond dispute that APTRA represents a much-needed and comprehensive statute governing the rulemaking and adjudicatory functions of State administrative agencies.[10] It is not, however, universally applicable to such functions; that is to say, APTRA does not, by its very terms, purport to apply to *every* instance of rulemaking and adjudication by *every* public body in this State possessing such powers. Indeed, the Legislature quite carefully circumscribed the statute's applicability in three ways.

---

**10.** *See generally* Harris, *An Administrative Procedure Act for Texas,* 5 Sw.L.J. 125 (1951); Terry, *The Proposed Texas Administrative Procedure Act,* 33 Tex.L.Rev. 499 (1955); Barber, *Judicial Review of Administrative Agency Action—A Need for Reform?,* 40 Tex.L.Rev. 992 (1962); ——, *Current Problems: Administrative Government in Texas,* 47 Tex.L.Rev. 805 (1969); Hamilton and Jewett, *Texas Register Act: Contested Cases and Judicial Review,* 54 Tex.L.Rev. 285 (1976).

First, APTRA § 21 sets out several kinds of agency proceedings which are expressly excepted from the statute. These deal with such proceedings as driver's license suspensions, parole proceedings, welfare-benefit proceedings, and other specified proceedings.

Next, the scope of APTRA (insofar as it governs an agency's exercise of an adjudicatory power) is limited by the statutory definition given the expression "contested case," as that definition is set out in APTRA § 3(2):

> "Contested case" means a proceeding, including but not restricted to ratemaking and licensing, in which the legal rights, duties, or privileges of a party are to be determined *by an agency after an opportunity for adjudicative hearing.*

(emphasis added). The uncertain scope of this definition is ably discussed in Hamilton and Jewett, *The Administrative Procedure and Texas Register Act: Contested Cases and Judicial Review,* 54 Tex.L.Rev. 285 (1976). As they point out, there are several meanings possible to be assigned this statutory definition and some of these different meanings obviously enlarge or restrict the kinds of agency adjudications that are subject to the provisions of APTRA. *Id.* at 286–92.

Finally, a rather large exclusion from APTRA results from the statutory definition given the word "agency" in § 3(1) of APTRA:

> "Agency" means any state board, commission, department, or officer having *statewide jurisdiction,* other than an agency wholly financed by federal funds, the legislature, the courts, the Industrial Accident Board, and institutions of higher education, *that makes rules or determines contested cases.*

(emphasis added). We need not belabor the obvious exclusion of federally financed agencies, the Legislature, the courts, the Industrial Accident Board, and institutions of higher learning. We must observe, however, that the general applicability of APTRA is, by the remainder of the statutory definition, limited to a state board, commission, department, or officer having both (1) statewide jurisdiction and (2) the power to make rules and determine "contested cases." The board of trustees of a local school district would not, therefore, fall within the scope of APTRA because such a board does not have "statewide jurisdiction" in any matter, even though it does possess the power to make rules and determine controversies that might otherwise be characterized as "contested cases." The Commissioner of Education and the State Board of Education have, on the other hand, "statewide jurisdiction" and in many instances do have the power to determine "contested cases," as that expression is defined in APTRA § 3(2). We hold, however, they do not determine a "contested case" in their administrative review of an adjudication by a local board under The Term Contract Nonrenewal Act.

*If* an adjudication falls within the statutory definition of a "contested case," then it must be conducted by the agency in accordance with the provisions of APTRA §§ 13–18.[11] For example, a party to the

---

11. *If* an agency adjudication falls within the definition of a "contested case" to which APTRA applies, the statute generally contemplates a trial-type proceeding in the agency, characterized by original fact findings from evidence adduced in the agency and by agency determinations of questions of law and policy. We shall summarize the provisions of APTRA §§ 13 through 18 which govern such adjudications:

Section 13 sets out requirements and time limits for notice, including a statement of the legal authority and jurisdiction under which the hearing is to be held and the applicable statutes and rules involved. "Opportunity must be afforded all parties to respond and present evidence and argument on all issues involved." Section 13A provides for interpreters for deaf parties and witnesses.

Section 14 provides, in rather elaborate fashion, for the reception of evidence, including incorporation of judicial rules of evidence, official notice, objections to evidence, discovery, subpoenas, cross examination of witnesses, and other matters. Section 14A deals with more particular aspects of discovery.

Section 15 requires, among other things, the preparation of a "proposal for decision," its formulation, its content, the making of exceptions or replies to it, and other matters.

proceeding must be afforded an opportunity to present evidence and argument on all issues involved (§ 13(d)); the agency must make *its own* fact findings from the evidence adduced *before it* (§ 16(b)); and, a dissatisfied party must, as a prerequisite to any appeal to a district court, make a motion for rehearing (§ 16(e)). And, of course, such a "contested case" is subject to judicial review under APTRA §§ 19, 20, including the reviewing court's examination of the record compiled before the agency to determine, among other things, whether substantial evidence supports the agency's findings of fact and whether the agency's other determinations are arbitrary or capricious (§ 19(e)(5), (6)).

We think it quite clear that the provisions of APTRA §§ 13–18 contemplate a course of agency adjudication quite different from that prescribed for the Commissioner and the State Board of Education in § 21.207 of The Term Contract Nonrenewal Act. The Commissioner and the Board could not possibly follow the contrary mandates of the two statutes. For example,

§ 21.207 of the Act directs that the Commissioner examine the record compiled before the local board to determine whether *that* board's findings of fact are supported by substantial evidence and whether it has acted arbitrarily, capriciously, or unlawfully, with the correlative prohibition that the Commissioner shall not substitute his judgment for that of the local board. On the other hand, if APTRA is applicable to the proceedings, the Commissioner *must* substitute his own judgment for that of the local board, for he must make his own findings of fact and conclusions of law *from evidence adduced before him.* APTRA §§ 13(d), 16(b). *His* findings and other determinations are then subject to judicial review under the substantial-evidence rule and the other standards set out in APTRA § 19(e).

In short, the Commissioner could not simultaneously be faithful to § 21.207 of The Term Contract Nonrenewal Act *and* APTRA §§ 13–18. From these inconsistencies, we conclude that the Legislature did not intend that the Commissioner's review

Section 16 governs the final decisions and orders in a contested case. The decision "must include findings of fact and conclusions of law, separately stated." *When* it becomes final for purposes of judicial review is specified; a time limit is imposed for making the decision, with provision for extension; and, of course, a motion for rehearing is made a "prerequisite to an appeal." Time limits for such motions and replies thereto are also specified. The motion is overruled by operation of law 45 days after rendition of the final decision or order to which it is addressed, but modification of that and other time limits is possible by agreement of the parties, approved by the agency.

Section 17 prohibits ex parte consultations with the agency employees "assigned to render a decision or to make findings of fact and conclusions of law" in the case.

Section 18 makes particular provisions for contested cases involving the administrative power of licensing.

Section 19 sets out elaborate provisions for the judicial review of agency decisions and orders in contested cases. These include procedure and venue (subsections (a), (b)) and the scope of judicial review. Concerning the scope of review, it may either be by trial de novo, including a trial by jury, or it may be "other than by trial de novo," the applicable type of review being that "authorized by law"

for the particular agency decision that is the object of judicial review (subsections (c), (d)). In cases of judicial review "other than by trial de novo," the review is generally limited to the record compiled in the agency; and, the reviewing court "may not substitute its judgment for that of the agency as to the weight of the evidence on questions committed to agency discretion, but the court

may affirm the decision of the agency in whole or in part and shall reverse or remand the case for further proceedings if the substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) in violation of constitutional or statutory provisions;

(2) in excess of the statutory authority of the agency;

(3) made upon unlawful procedure;

(4) affected by other error of law;

(5) not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole; or

(6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

(subsection (e)).

Section 19A provides for the enforcement of agency orders and decisions, and § 20 provides for further judicial review by appeal from the decision of the trial court.

of the local-board record, under § 21.207 of The Term Contract Nonrenewal Act, should constitute an "adjudicative hearing" so as to fall within the definition of a "contested case" supplied in APTRA § 3(2), even though his decision on such administrative review in one sense does amount to an "appellate" determination of Burke's "legal rights, duties, or privileges...."[12] We hold accordingly. It necessarily follows from our holding that Burke was not required to make the motion for rehearing mandated by APTRA § 16(e) as a prerequisite to judicial review. Consequently, the trial court erred in awarding summary judgment against Burke on that ground.

We reverse the judgment below and remand the cause to the trial court.

---

**12.** We will not endeavor to examine what procedures and standards apply to suits for judicial review, under The Term Contract Nonrenewal Act, in the absence of APTRA. It would appear, however, that pre-APTRA law would govern under the general principle that the court is not to decide whether the agency order is right or wrong but whether the evidence is such that reasonable minds could not have reached the conclusion the agency must have reached in order to justify its actions; coupled with the limitation that the court may not substitute its judgment for that of the agency on an issue of fact. *Trapp v. Shell Oil Co.*, 145 Tex. 323, 198 S.W.2d 424 (1946). *See generally,* Guinn, Judicial Review of Administrative Orders in Texas, 23 Baylor L.Rev. 34 (1971). There is, we note, a substantial body of case law in that regard as evidenced by the numerous citations under § 11.13 of the Texas Education Code.